**In re TRIALS OF PENDING AND FUTURE CRIMINAL CASES.**

Certin attorneys admitted to practice before the bar of this court, Petitioners.

**No. 69 C 2339.**

United States District Court
N. D. Illinois, E. D.

Nov. 13, 1969.

Before CAMPBELL, Chief Judge, and PERRY and NAPOLI, District Judges. —The Executive Committee of said Court.

## MEMORANDUM

Petitioners, Sam Adam, Robert S. Bailey, William A. Barnett, Herbert Barsy, Daniel A. Becco, Charles A. Bellows, Jason E. Bellows, Harry J. Busch, Edward J. Calihan, George F. Callaghan, Kermit Coleman, George B. Collins, Chauncey Eskridge, Joseph T. Garlovsky, Anna R. Lavin, Melvin B. Lewis, Sherman C. Magidson, William J. Martin, Fleetwood M. McCoy, John J. Muldoon, Frank W. Oliver, George C. Pontikes, Jerome Rotenberg, Howard T. Savage, Mark L. Schwartzman, Julius L. Sherwin, Harvey M. Silets, Raymond J. Smith, William J. Stevens, Patrick A. Tuite, Carl M. Walsh, Gerald M. Werksman, Edward A. Williams, JoAnne F. Wolfson and Warren D. Wolfson, attorneys who state they practice before this court and engage in defense of criminal cases, lodged with the Chief Judge on November 6, 1969 a petition which in an attached motion they requested be considered by the Executive Committee of this court. Upon receipt by the Executive Committee the said petition was ordered filed and was considered by this Committee on November 7, 1969.

Essentially the petition states that the above listed attorneys are concerned that their cases are likely to be affected by "extraordinary events", which they attribute to the trial of the case of United States of America v. David Dellinger et al, 69 CR 180. The petition has no prayer for specific relief, but the petitioners request that the court "adopt measures to guarantee the impartial conduct of criminal trials before the courts in this district and to insure public confidence in the conduct of those trials." In the press and on radio and television in this District on November 6, 1969, and in violation of the Canons of Professional Ethics, the designated spokesman for the group, one Frank W. Oliver, became more specific and demanded of the court postponement of all criminal cases pending in this District until the conclusion of United States v. Dellinger.

Though most inartfully drafted, the petition seems to express concern over two not necessarily related circumstances which petitioners allege are "extraordinary". Those two are, (1) certain proceedings in United States v. Dellinger and (2) the security measures necessarily adopted in and around this Courthouse to protect against continuous bombing threats. We shall discuss each.

## 1. THE DELLINGER CASE

█ Petitioners cite a number of events alleged to have occurred during the trial and suggest that these events have created an atmosphere somehow remotely not conducive to fair and impartial deliberations by jurors in other cas-

es. As examples of the so-called "atmosphere", the petitioners point out that frequent protests and demonstrations have been conducted in the immediate vicinity of the Courthouse, "by persons who sympathize with the defendants in the case" and that "some demonstrations have included highly publicized utterances recommending revolution against the government of the United States". This court is fully aware of the nature of the demonstrations, many of which have been promoted and attended by defendants in the *Dellinger* case. We believe, however, that this court, while permitting those defendants and their sympathizers to exercise their constitutionally guaranteed rights to protest, has also carefully and adequately protected the rights of all persons being tried in this Courthouse. Indeed there have been no objections to these demonstrations noted in the many other criminal and civil cases that have been tried during this period. This is undoubtedly due to the fact that this court has continuously obeyed all of the directives of the Supreme Court and of the Judicial Conference of the United States concerning a fair and impartial atmosphere for the conduct of criminal proceedings. (See Rule 34, General Rules of this Court; Rules 1.07, 1.08 and 1.09, Local Criminal Rules; See General Order, regarding picketing, parading and demonstrations, entered February 12, 1965. See also, Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), and "Report of the Committee on the Operation of the Jury System on the Free Press-Fair Trial Issue", adopted by the Judicial Conference of the United States, September 19, 1968). This Committee on behalf of the court here finds that nothing in any demonstration to date has been in any way disruptive of the orderly judicial process of any proceedings within this Courthouse.

Petitioners also refer to certain events which have occurred in the courtroom during the trial of United States v. Dellinger and suggest that these events may affect other trials. For example, petitioners point out that it was necessary at one point in the proceedings for the court to order one of the defendants forcibly restrained so that he would not, "interrupt the proceedings by attempting to defend himself". This suggestion is totally and irresponsibly inaccurate and unworthy of any member of the bar of this court insofar as it suggests that the restraining of the defendant was necessary because he "attempted to defend himself" instead of correctly noting that it was necessary because of the outrageous character of his conduct at the trial. In Seale v. Hoffman, D.C., 306 F.Supp. 330 (Nov. 5, 1969) a case decided by written opinion *before* this petition was filed, Judge Edwin A. Robson of this court fully discussed the circumstances surrounding the restraining of the defendant in the *Dellinger* case. As it is obvious the petitioners here have not read Judge Robson's thorough and accurate opinion we quote at length from that opinion for their benefit:

"The complaint also alleges that Seale's constitutional rights were violated by forceable gagging and handcuffing on October 30, 1969, and October 31, 1969. The complaint further alleges that while such restraints were terminated by direction of the trial judge on November 3, 1969, physical restraints are a continuing threat to him. The record reflects that these measures were invoked by the trial judge only after Seale had caused numerous disruptions of the *Dellinger* trial over a five-week period. The record discloses numerous contemptuous outbursts by Seale, often villifying the judge with derogatory and abusive name-calling. The record also indicates that these outbursts necessitated the removal of the jury and the suspension and delay of the trial proceedings.[2] On each of these occasions the trial judge admonished Seale to refrain from such outbursts. While a defendant in a criminal case has an absolute right to be present during his trial, he does not have a right to brazenly make a shambles of

the criminal judicial process and attempt to force a mistrial. The Seventh Circuit has recently ruled that a trial judge may restrain disruptive and disrespectful conduct by whatever means necessary, *even if those means include physical restraints and gagging*. United States ex rel. Allen v. State of Illinois, 413 F.2d 232, 235 (7th Cir.1969). While resort to such restraints is distasteful to all concerned, the record is clear that Seale unequivocally refused to conform his conduct with the minimal requirements of courtroom order and decorum. Instead, he stood in open defiance of the court's authority. No other remedy was available to the trial judge. This court therefore does not find that physical restraints placed upon a contumacious defendant under the circumstances involved here infringes upon a constitutionally protected right." (Opinion, pages 332 and 333)

2. (In original) "The record indicates that the first gagging occurred in the afternoon of October 29, 1969. Due to Seale's outbursts, a *total* of one-half hour's evidence was taken during the *entire* afternoon."

We have reviewed the record in both Seale v. Hoffman and United States of America v. Dellinger and fully agree with the findings and conclusions of Judge Robson.

■ The petition also refers to a number of other events having occurred in the courtroom relating only to the *Dellinger* case and suggests, though we are at a loss to understand how, that these events will affect other trials in this Courthouse. The suggestions are ridiculous and merit no further comment. We find that all of the precautions taken by the trial judge are fully in accord with the directives of the United States Supreme Court in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) ; the suggestions of the Judicial Conference in the "Report of the Committee on the Opera-

tion of the Jury System on the Free Press-Fair Trial Issue"; our own Local Rules of Criminal Procedure (Rule 1.09) ; and the inherent responsibilities of Judicial office. The trial judge has the responsibility to preserve decorum in and around the courtroom and to preserve the integrity of the proceedings. The precautions taken by Judge Hoffman are completely consistent with those responsibilities. We can see no way in which these precautions can affect the outcome of other cases pending in this Courthouse. Of course, competent counsel can always request that a court inquire on *voir dire* as to any effect these or any other circumstances may have on jurors in a specific case. This fact alone should have prevented any such counsel among these petitioners from making the charges the petition contains. We also note that the court has already made inquiry before this petition was filed and ascertained that no venireman has been in any way affected or influenced by the temporary measures now in effect in this Courthouse.

## 2. SECURITY PRECAUTIONS

Petitioners also state that they are "concerned that persons called to jury service in the climate which now prevails in the United States Courthouse will be unable to perform their duties impartially" in that they may somehow be influenced by the security precautions taken by the Offices of the United States Marshal and the General Services Administration to secure and protect the lives of persons working or having business within this Courthouse and to protect government property. We first point out that our authority over the Administrative Agencies charged with the responsibility of protecting this Courthouse is limited. More importantly, however, we wholeheartedly approve of all of their actions thus far. In fact, the day this petition was filed, the entire court expressed its approval in writing to the many agencies participat-

337

ing in the security operations of which these petitioners now complain.

We find that the security precautions here complained of are not oppressive and consist only of a limited inquiry and a cursory search of brief cases or other bags or packages carried by persons entering this Courthouse. The deputy marshals performing the search are always courteous and obliging. All Circuit and District Judges in this Courthouse have willingly consented to the search. At frequent intervals each day the Chief Judge or Acting Chief Judge of this District have personally supervised the security precautions to assure that they continue to be performed with a minimum of inconvenience and with utmost courtesy.

These precautions were initiated only after repeated threats to bomb this Courthouse were received by federal and local police agencies. Many of these threats were wholly unrelated to the *Dellinger* case. Failure by the General Services Administration and the United States Marshal to take precautions noted would, in our view, be irresponsible particularly in light of the following facts:

(a) On September 19, 1969 a bomb caused an explosion at the Federal Office Building in New York causing damage in excess of $500,000.

(b) On September 26, 1969 a bomb caused an explosion at our neighboring District, The United States Courthouse and Federal Building in Milwaukee, Wisconsin, causing damage estimated at $75,000.

(c) On September 26, 1969 a bomb caused an explosion on federal property at the National Guard Armory, Madison, Wisconsin, causing damage estimated at $25,000.

(d) On September 25, 1969 a briefcase containing 17 sticks of dynamite and a timing device was planted in the Civic Center Building and Cook County Courthouse, Chicago, Illinois on a floor immediately below the State Supreme Court Justices' Chambers.

(e) On October 6, 1969 an explosion occurred at the Haymarket Square statue located in Chicago, Illinois.

Even as this memorandum is being prepared the wisdom of the precautions complained of by these petitioners is demonstrated by the reports of further bombings in New York City.

In marked contrast to the attitude of these few attorneys expressed in this petition is the splendid cooperative attitude expressed to the court by so many other attorneys specializing in criminal as well as civil cases and particularly our official Chicago Bar Association. We are deeply grateful to them for their splendid assistance and confidence.

CONCLUSION

In summary, we find no extraordinary state of affairs in this Courthouse as described in the petition. We further conclude that the court has taken all necessary precautions to assure that all trials in this Courthouse are conducted in a fair and impartial atmosphere.

We further conclude that the petition presents no factual allegations nor legal authority for relief properly cognizable by the Executive Committee to which it is directed.

Although the petitioners gratuitously assign to the court as well as themselves the inability to deal with the existing "extraordinary state of affairs", the court as indicated hereinabove finds itself in no such unfortunate condition.

Accordingly we conclude that the petition is frivolous and impertinent. It is therefore stricken.