Duffy, Senior Circuit Judge, dissented and filed opinion.

**In the Matter of Frank W. OLIVER, Attorney, Respondent-Appellant.**

**No. 18400.**

United States Court of Appeals, Seventh Circuit.

Nov. 2, 1971.

---

Percy L. Julian, Jr., Anthony J. Theodore, Madison, Wis., Robert Kasanof, New York City, Melvin B. Lewis, Chicago, Ill., James M. Shellow, Milwaukee, Wis., Frank W. Oliver, Edmund W. Kitch, Mark Spiegel, Chicago, Ill., Shellow & Shellow, Milwaukee, Wis., for respondent-appellant.

William J. Bauer, U. S. Atty., D. Arthur Connelly, Chief, Civil Div., Asst. U. S. Atty., Chicago, Ill., for appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Edmund W. Kitch, Mark Spiegel, Chicago, Ill., for amicus curiae, the Chicago Council of Lawyers.

Before SWYGERT, Chief Judge, DUFFY, Senior Circuit Judge, and KERNER, Circuit Judge.

SWYGERT, Chief Judge.

This is an appeal from a final judgment in a disciplinary proceeding instituted against an attorney admitted to practice before the United States District Court for the Northern District of Illinois. Frank W. Oliver, the attorney, was charged with violating a certain "Policy Statement" promulgated by that court on November 12, 1965 * which related to extra-judicial comment by attorneys with regard to pending litigation and with violating then Canon 20 of the Canons of Professional Ethics of the American Bar Association which related to the same subject matter. Upon its finding that Oliver had violated the policy statement and the Canon, the executive committee of the district court reprimanded Oliver and warned him that "any future misconduct similar to that here reprimanded shall subject him to disbarment." In re Oliver, 308 F.Supp. 1183, 1185 (N.D.Ill.1970).

The district court found that Oliver, together with numerous other attorneys of its bar, had filed a petition which was the subject of the district court's opinion reported as In re Trials of Pending & Future Criminal Cases, 306 F.Supp. 333 (N.D.Ill.1969), and that Oliver had then held a prearranged press conference and issued public statements "which related to and commented upon the petition he had just filed with the court." The petition was ultimately dismissed by the court, In re Trials of Pending & Future Criminal Cases, *supra*, and the court issued a citation to Oliver leading to this proceeding.

Oliver conceded in the trial court, as that court found, that he had knowledge of the policy statement at the time of the conduct charged and that he knowingly violated it. He urges us that the only issues on this appeal are whether the policy statement and Canon 20 are

---

* The policy statement provided:
    The members of the bar of this court are reminded that they as well as the Judges should, in accordance with the Canons of Judicial and Legal Ethics, refrain from commenting on and attempting to explain through any source of news media, action taken or anticipated in pending litigation.

    Extra-judicial comments and out-of-court explanations or statements by the bar notwithstanding their being an attempt to avoid criticism frequently tend to create rather than resolve misconceptions and suspicions in the mind of the public.
    Violations of this policy by any member of the bar of this court would be a subject of discipline pursuant to Rule 8.

facially constitutional and whether, assuming facial validity, his conduct may be constitutionally punished. The United States Attorney argues, on behalf of the district court, that the only issue before us is whether Oliver may even question the constitutional validity of the policy statement and the Canon after having violated them knowingly. The threshold issue is whether Oliver may challenge the validity of the rule he violated.

■ The principal thrust of the Government's argument is that a general rule of court promulgated to govern the conduct of attorneys admitted to practice before it may not be challenged after its violation, but rather must be obeyed until it is abrogated through a declaratory judgment or similar action which contests its validity without violation. As its principal authority for this proposition, the Government cites Walker v. Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967), and United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), and argues that both were cases involving injunctions which were violated where the validity of the injunctions and the statutes on which they were based was not permitted to be challenged in contempt of court proceedings which resulted from such violations. The Government argues that the case of a violated injunction whose validity is sought to be challenged is highly analogous to the case before us where a local rule of court was violated and its validity is challenged. We do not believe the analogy the Government seeks to draw is an appropriate one.

In Gamble v. Pope & Talbot, Inc., 307 F.2d 729 (3d Cir. 1962) (en banc), an attorney had violated a district court's local rules establishing a standard pretrial briefing schedule which also provided that, among other sanctions for violation of such rules, "[T]he Court, in its discretion may make such order with respect to the imposition of fines, costs and counsel fees, as is just and proper * * *." Id., at 730. The district court as punishment ordered that the defendant (who was represented by the offending attorney) be precluded from calling certain witnesses at trial, that the attorney be fined $100 payable to the United States and that the plaintiff prepare an appropriate order imposing costs on the defense, including attorneys' fees, deriving from the defense attorney's failure to comply with the local rule. The attorney appealed, challenging only the validity of the rule allowing the imposition of fines and the propriety of the fine imposed. The Third Circuit found the local rule invalid as exceeding the rule-making authority of the district courts. Id., at 731–732. We believe that the Third Circuit was correct in considering the validity of the local district rule there challenged after violation in the same fashion that we are asked to consider the validity of the policy statement here violated. See Zaroff v. Holmes, 127 U.S.App.D.C. 1, 379 F.2d 875, 877–878 (1967) (Burger, J., concurring).

There are several reasons for permitting a rule of court to be challenged by one who has violated it. Initially there exists some question whether one who has neither violated such a rule nor been personally advised that violation would lead to discipline has standing to challenge the validity of the rule. See Younger v. Harris, 401 U.S. 37, 41, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). And it is not difficult to foresee circumstances in which one might violate a court rule without knowing either of its existence or of its application to him at the time of the conduct which constituted the violation. These considerations, we believe, are sufficient to distinguish the instant case from the line of cases prohibiting all except jurisdictional challenges to the validity of injunctions by one who has violated them.

■ Moreover, there is a fundamental distinction between the functions of a court in its usual adjudicative role, in which it is restricted to determining relative rights between parties clearly subject to its jurisdiction based upon

facts then made known to the court, and the function of a court in an essentially legislative role, in which it adopts broad rules, perhaps having their greatest effect on parties not before it, based on facts largely anticipated. In this latter function courts should be treated more like legislatures than courts in that their rule-making decisions should be subject to the same sorts of challenges permitted for statutes. As one who has violated a statute and is prosecuted for such violation may challenge the validity of the statute, so should one who has violated a rule of court be permitted to challenge the validity of the rule itself.

The rationale for the holdings in the injunction cases appears to be that when a court is acting in its adjudicative role its orders issued, if it is properly possessed of personal and subject matter jurisdiction, may not be challenged collaterally but must be challenged, if at all, by direct review. The language of those cases implies that such was the basis for their decision. *E. g.*, Howat v. Kansas, 258 U.S. 181, 189–190, 42 S.Ct. 277, 66 L.Ed. 550 (1922). The circumstances here are such that characterizing the present appeal a collateral attack on the validity of the rule is not appropriate. We hold that this case is not governed by the injunction cases and that Oliver may properly challenge the validity of the district court's policy statement.

■■ Turning to the merits of Oliver's challenge to the validity of the policy statement, it is clear that a rule of court which violates the Constitution or otherwise modifies substantive rights may not stand. As the Supreme Court said in Washington-Southern Nav. Co. v. Baltimore & Phila. Steamboat Co., 263 U.S. 629, 635, 44 S.Ct. 220, 222, 68 L.Ed. 480 (1924):

> The function of rules is to regulate the practice of the court and to facilitate the transaction of its business. * * * Most rules are merely a formulation of the previous practice of the courts. Occasionally, a rule is employed to express, in convenient form,

as applicable to certain classes of cases, a principle of substantive law which has been established by statute or decisions. But no rule of court can enlarge or restrict jurisdiction. *Nor can a rule abrogate or modify the substantive law.* [Emphasis added].

■ The substantive law with regard to the power of courts to restrict the exercise of first amendment freedoms by lawyers and litigants has been stated by this court's opinion in Chase v. Robson, 435 F.2d 1059, 1061 (7th Cir. 1970), where we said, "[B]efore a trial court can limit defendants' and their attorneys' exercise of first amendment rights of freedom of speech, the record must contain sufficient specific findings by the trial court establishing that defendants' and their attorneys' conduct is 'a serious and imminent threat to the administration of justice.' [Citing Craig v. Harney, 331 U.S. 367, 373, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947)]." *Chase* involved a challenge on first amendment grounds to an order entered in a pending criminal case which directed that the parties to the action and their counsel "make or issue no statements, written or oral, either at a public meeting or occasion, or for public reporting or for dissemination in any fashion, regarding the jury or jurors in this case, prospective or selected, the merits of the case, the evidence, actual or anticipated, the witnesses, or the rulings of the court." *Id.*, at 1060. Since *Chase* was a criminal case tried before a jury there was some support for the order in the recommendations of the Committee on the Operation of the Jury System of the Judicial Conference of the United States, 45 F.R.D. 391, 404–407 (1969). But even in criminal cases tried before a jury, that committee limited its suggested prohibition against dissemination of information to situations where "there is a reasonable likelihood that such dissemination will * * * prejudice the due administration of justice." *Id.*, at 404. A blanket prohibition, such as the instant policy statement, against all comment in all cases whether tried before a judge or

jury without regard to whether such comment is or even could be prejudicial to the fair administration of justice cannot stand without making a mockery of the free speech guaranty of the first amendment. We therefore hold that the policy statement of November 12, 1965 upon which the district court's judgment was based is violative of the first amendment and is null and void.

As for the additional ground relied upon by the district court for its punishment of Oliver, even if we assume that Canon 20 is a constitutionally permissible predicate for the discipline of an attorney, there is no basis in this record upon which it could be found that Oliver's conduct was "a serious and imminent threat to the administration of justice" as required by *Chase*.

The judgment of the district court is reversed.

DUFFY, Senior Circuit Judge.

I respectfully dissent.

Attorney Frank W. Oliver was and is an officer of the United States District Court for the Northern District of Illinois, Eastern Division. He had petitioned that Court asking that he be admitted to practice before that Court. He was permitted to do so upon taking the solemn oath which included " * * * I will demean myself uprightly and according to law and the recognized standards of ethics of the profession."

It is not disputed that a court authorized to admit attorneys to practice before it has the inherent power to regulate the practice of law therein by the adoption of rules and canons of ethics and to apply those rules when the court deems necessary.

A rule of court properly authorized has the full force and effect of law and constitutes an order of the court. Weil, et al. v. Neary, 278 U.S. 160, 169, 49 S. Ct. 144, 73 L.Ed. 243 (1928); Link v. Wabash Railroad Company, 291 F.2d 542 (7 Cir., 1961), affirmed 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734.

Oliver was charged with violating a policy statement of the District Court which required members of the bar of that Court to refrain from commenting on and attempting to explain through any source of news media, the action taken or anticipated in pending litigation.

Oliver, on behalf of himself and other named attorneys, filed a petition with the District Court. One of the demands in the petition asked for the postponement of all criminal cases pending in the United States District Court until the conclusion of the trial of United States v. Dellinger, et al., 69 CR 180 (N.D.Ill. 1970). The petition states that the attorneys who signed are concerned that their cases are likely to be affected by the "extraordinary events" in the Federal Court House referring to the trial of the *Dellinger* case. The second charge of the petition was a criticism of the security provisions taken by officers of the United States Marshal and the General Services Administration to secure and protect the lives of persons working or having business in the courthouse and to protect government property.

Before the District Court had an opportunity to act on the petition, Oliver held a conference with the news media and appeared on television and radio announcing he was not going to obey the District Court's policy statement. At the conference, he promised to and has committed additional violations of the policy statement.

Oliver admitted that the press interviews and the appearances on television and radio had been arranged prior to the filing of the petition with the District Court, knowingly in violation of the policy statement. By holding this conference, Attorney Oliver did far more than disagree openly with the District Court on a matter of public interest.

In his television and radio interview, Oliver stated he was sympathetic with the defendants in the Dellinger trial (Bobby Seale and others). He also found much fault and severely criticized

**116**

the security precautions at the Federal Court Building in Chicago. Such precautions had been put into effect after many threats of bombing had been received by federal and local police agencies.

I do not assume that Oliver had any expert knowledge of bombing techniques, but making light of threats of bombing is not impressive upon this author, whose principal office and workshop is located in the United States Courthouse and Federal Office Building in Milwaukee, Wisconsin, which building was bombed on September 25, 1969, causing extensive damage.

Possibly Oliver had never heard of the bombing of the Federal Office Building in New York on September 19, 1969, causing damage in excess of a half million dollars. However, he surely must have been aware that on September 25, 1969, a brief case containing 17 sticks of dynamite and a timing device was planted in the Cook County Courthouse in Chicago on a floor directly below the Chambers of the Illinois Supreme Court. Yet Oliver thought it appropriate at this time to publicly denounce such protective measures at the Federal Building in Chicago and demean the people who were charged with the responsibility of enforcing these measures.

In Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967), the Supreme Court held that the petitioners in that case could not bypass an orderly review of a temporary injunction before disobeying it. In *Walker, supra*, some of the persons who had been served with copies of the writ of injunction held a press conference and announced their intention to disobey the injunction.

In the case before us, we have the same kind of arrogant defiance.

I recognize that the majority of this panel has attempted to distinguish such a case as *Walker, supra*, by saying there is a distinction between the functions of a court in its usual adjudicative role and

the function of a court in an essentially legislative role. I do not agree.

The conduct of defendant Bobby Seale and the other defendants during the trial of United States v. Dellinger, et al., *supra*, was shameful. In such a situation a trial judge should not be shackled by finespun distinctions between the adjudicative and the legislative functions of a reviewing court. We should do all we possibly can to enable a trial court to judicially control any such unfortunate situation. We should keep in mind the words of the Supreme Court in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1965). In that case the Court commented, at page 363, 86 S.Ct. at page 1522:

"We must remember that reversals are but palliatives; the cure lies in those remedial measures that will prevent the prejudice at its inception. The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function. Collaboration between counsel and press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures."

While in *Sheppard, supra*, out of court statements by attorneys and others connected with the trial were reasons for overturning a criminal conviction, I believe the Supreme Court's comments are directed at preventing similar error and prejudice in any matter before any court that is similarly prejudiced. Therefore, I feel no need to limit the application to the Supreme Court's sanction for court rules and regulations only to criminal matters. I am convinced that such disciplinary rules are proper at any time the functions of a court may be prejudiced upon considering again the comments of the Supreme Court in *Sheppard, supra*, "The courts must take such

steps by rule and regulation that will protect their processes from prejudicial outside interferences." The regulatory power of a court should not be limited merely to persons currently within the adjudicative process of the court as suggested by the majority, but to any officer of the court or other person who is within the legislative control of the court as well.

Despite the possible overbreath of the rule announced by the court below- of which Oliver complained in his petition, no one should be more aware or more cognizant of the orderly legal process which should be followed in challenging such a rule or policy statement than an attorney and officer of that court.

I would affirm.