**In the Matter of Frank W. OLIVER, Attorney, Respondent-Appellant.**

**No. 71–1519.**

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1972.

Decided Oct. 19, 1972.

Melvin B. Lewis, John C. Menk, Chicago, Ill., Earl F. Morris, Columbus, Ohio, William W. Brackett, Joseph R. Lundy, Sybille C. Fritzsche, Alexander Polikoff, Chicago, Ill., for respondent-appellant.

James R. Thompson, U. S. Atty., Jeffrey Cole, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before KILEY, SPRECHER and HAMLEY,[1] Circuit Judges.

KILEY, Circuit Judge.

An Executive Committee Panel[2] of the United States District Court for the Northern District of Illinois found the conduct of respondent attorney Oliver—during the trial of a criminal case in which he was representing defendant —in violation of a rule of the court and the Illinois Code of Professional Responsibility, and suspended Oliver from practice in the court for one year. Oliver has appealed. We reverse.

At the close of the proceedings in United States v. Chase, et al.,[3] in the district court on June 3, 1970, Oliver had conversations in the court's witness room. The following morning a Chicago newspaper published a story stating that Oliver had "talked about" getting into the trial because he believed he could

1. Circuit Judge Frederick G. Hamley of the Ninth Circuit is sitting by designation.

2. See District Court Rule 8 (Northern District of Illinois).

3. 468 F.2d 141 (7th Cir. 1972). The *Chase* case involved fifteen defendants charged with substantive and conspiracy counts of destroying Selective Service records. Ten defendants were convicted. The convictions of eight of the ten were affirmed by this court.

"make a contribution to the peace movement," and that he had—in response to newspaper reporters' questions—said at the time:

> I really feel that these cases are the most important cases ever tried in this country. I feel the future of this country as a democracy depends on their outcome, and right now I'm very pessimistic about the outlook.

The story went on to state Oliver was asked questions about two of the four defendants he was representing who failed to show up on June 3, the final day of the trial. "Oliver smiled and shrugged his shoulders," and answered:

> Just say I'm accustomed to disasters on every side. This is just another such disaster.

> I just hope they're both okay. I hope we don't find they are lying in a ditch someplace.

On June 11 the Executive Committee *sua sponte* issued a citation charging that Oliver had used the court's witness room "for the purpose of holding an interview or interviews with news media personnel;" that he purportedly made comments concerning his motive for being in the *Chase* case and the failure of two of his clients to appear; and that as a result of his interviews the newspaper article mentioned in the paragraph above appeared. The citation charged violation of Disciplinary Rules 1–102(A)(5) and 7–107(D) of the Illinois Code[4] and Local Criminal Rule 1.07(d) which proscribe certain statements to news media by attorneys in criminal cas-

es. The citation noted prior warnings to, and discipline of,[5] Oliver for infractions of similar canons and rules "which endanger the rights of all parties to a fair trial."

Oliver moved to dismiss the citation, claiming violation of his First and Fifth Amendment rights. The Executive Committee denied the motion. Oliver thereafter sought a stay in this court of the citation proceedings. This court denied the stay, but ordered the Executive Committee to hold a hearing upon the merits of Oliver's claim that the Rules were unconstitutional. Oliver then filed an answer before the Committee. He called for strict proof of the charges that he used the witness room for the purpose of holding interviews with news media personnel. He admitted the newspaper article was published but called for proof of allegations in the citation of the quotations in the article.

The Executive Committee heard evidence upon the citation, answer and arguments, made findings of fact and drew conclusions of law. It found Oliver "had a conversation" with a newspaper reporter on June 3, that the newspaper story followed, containing the comments quoted in the citation, and that Oliver had previously been "warned and disciplined" as noted in the citation. It concluded that Local Criminal Rule 1.-07(d) and Disciplinary Rules 1–102 and 7–107 of the Illinois Code were not unconstitutional and that Oliver's conduct was in "direct violation" of the Rules.

The only issue is whether there is a basis in the record for the Executive

---

4. Although the Executive Committee found that Oliver violated DR 1–102, *Misconduct*, that Rule has no significance in this appeal and is not argued by the parties, and we need not discuss it. It provides "A lawyer shall not: (1) Violate a disciplinary rule . . . (5) Engage in conduct that is prejudicial to the administration of justice."

5. This was a reference to In re Oliver, 308 F.Supp. 1183 (N.D.Ill.1970), wherein

the Executive Committee reprimanded Oliver and warned him that future similar misconduct . . . "shall subject him to disbarment." This court on appeal declared that—in the absence of the element of prejudice to the fair administration of justice—the policy statement subject of the reprimand and warning was unconstitutional. We reversed the Executive Committee judgment. 452 F.2d 111 (7th Cir. 1971).

Committee's conclusion that Oliver's comments violated the Rules [6] as charged in the citation.[7]

Disciplinary Rule 7–107(D) proscribes "making an extrajudicial statement that a prudent lawyer would expect to be disseminated by means of public communication and that relates to the trial, parties, or issues . . . [and] that [is] reasonably likely to interfere with a fair trial." Local Rule 1.07(d) does not contain the above quoted limiting words. The government asks us to read into Local Rule 1.07(d) the limitation that the statements have "a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." Those words, the government argues, appear in Section (a) of the Local Rule and were "intended to and . . . apply" in the succeeding sections of Rule 1.07. In deciding the issue before us—whether there is a basis in the record for the Executive Committee's conclusion that Oliver violated the Rules—we shall assume, without deciding that both Local Rule 1.07(d) and Disciplinary Rule 7–107(D) proscribe only statements which "a prudent lawyer would expect to be disseminated by means of public communication and that relate[s] to the trial, parties or issues . . . and that are reasonably likely to interfere with a fair trial or prejudice the due administration of justice."

There is no express finding by the Executive Committee that Oliver's comments were "reasonably likely to interfere with a fair trial" in the *Chase* case,[8] or that they would "otherwise prejudice the due administration of justice." Nor is there a finding that Oliver knew or should have known his comments would have that effect. Neither is there a finding that he knew or should have known that his questioner was a newspaper reporter who would publish Oliver's answers to the questions asked. We see no merit in the government's argument that the Executive Committee's bare conclusion of violation implicitly "perforce" found that Oliver knew his questioner was a reporter, and that the comments were made for public dissemination and were reasonably likely to threaten the due administration of justice. Disbarment of an attorney for one year is a serious penalty and should not be imposed except upon express fac-

6. Local Criminal Rule 1.07(d) states:
During the trial of any criminal matter, including the period of selection of the jury, no lawyer associated with the prosecution or defense shall give or authorize any extrajudicial statement or interview, relating to the trial or the parties or issues in the trial, for dissemination by any means of public communication, except that the lawyer may quote from or refer without comment to public records of the court in the case.
Illinois Code of Professional Responsibility Disciplinary Rule DR 7–107(D) makes exceptions. It states:
During the selection of a jury or the trial of a criminal matter, a lawyer associated with the prosecution or defense of a criminal matter shall not make or participate in making an extrajudicial statement that a prudent lawyer would expect to be disseminated by means of public communication and that relates to the trial, parties, or issues in the trial or other matters that are reasonably likely to interfere with

a fair trial, except that he may quote from or refer without comment to public records of the court in the case.

7. Leave was given five amici to file briefs in this appeal: American Bar Association, Chicago Bar Association, Chicago Council of Lawyers, American Civil Liberties Union, and Association of Defense Lawyers. The first two amici named argued to sustain the constitutionality of the Rules. The latter three amici challenged the constitutionality of the Rules. Oliver does not directly contend that the rules are unconstitutional. The government's brief is devoted mostly to discussing the constitutional argument raised by amici. In view of our decision set forth in this opinion, we find it unnecessary to decide or discuss the constitutional points argued by the amici and the government.

8. See this court's holding in Chase v. Robson, 435 F.2d 1059, 1061 (7th Cir. 1970), and in In re Oliver, 452 F.2d 111, 115 (7th Cir. 1971).

tual findings of the elements necessary to support the charges of violation of the Rules in the citation.

■ Furthermore, we conclude, as a matter of law, that had express findings been made, there is nothing in the record which would support express findings that Oliver's comments were reasonably related to the "trial or the parties or issues" in the *Chase* case. Having in mind the purposes of the Rules to prevent interference with a fair trial and prejudice to the due administration of justice, we hold that the comments cannot be reasonably related to the *Chase* trial or its issues or its parties so as to offend, in a meaningful way, the purposes of the Rules. This is true even if there were sufficient evidence to support an inference that Oliver knew his questioner was a reporter or that Oliver was indifferent to whether the comments would be disseminated. The comments, in our view, cannot reasonably be taken as relating materially to the "issues" in *Chase*. We think the comment about the two missing defendants must reasonably be taken to refer to "parties" in *Chase*, but we are unable to agree that the reference is meaningful within the purposes of the Rules. The reference in the comment to "these cases" might imply some relationship to the *Chase* trial; but to say that a *Chase* juror reading the newspaper story would be influenced one way or another in deciding the issues of the defendants' guilt or innocence is attributing to jurors too little sense of duty or fairness.

We further conclude, as a matter of law, that the record cannot support express findings that Oliver's comments were reasonably likely to endanger a fair trial in *Chase*, or reasonably likely to prejudice due administration of justice. As pointed out in the preceding paragraph, Oliver's comments could not be reasonably understood as meaningfully relating to the "trial, parties or issues" before the jury in *Chase*. Also the comments did not say that if the defendants in *Chase* were convicted, dam-

age to our democratic system would result. The *Chase* jury found the defendants guilty. And there is no basis in either comment for an express finding that Oliver was "hinting" that the government was responsible for the mysterious disappearance of his clients or that the government "murdered his clients and threw them in a ditch."

Because the record does not contain essential findings of fact to show Oliver's violation of the Rules and lacks sufficient evidence to support the essential findings, even if the findings had been made, we cannot agree with the government that we should remand with direction to "clarify the findings." The problem is not that factual findings need clarification, but that there are no factual findings, and, if there were, no record support for the findings.

We hold that the record does not support the Executive Committee's decision disbarring Oliver for one year from practice in the district court. The Executive Committee judgment is reversed.

Reversed.