**In the Matter of Peter S. SARELAS, an Attorney.**

**No. 72 D 2.**

United States District Court, N. D. Illinois, E. D. June 5, 1973.

Peter S. Sarelas, pro se.

U. S. Atty., James R. Thompson, Chicago, Ill., for petitioner.

## MEMORANDUM AND ORDER ON PETITION FOR DISCIPLINARY ACTION

Respondent is an attorney admitted to the bar of this court. In a disciplinary proceeding brought by The Chicago Bar Association, he was suspended from the practice of law for a period of two years having ". . . exhibited a continuous course of conduct . . . by instituting groundless lawsuits against the members of the bar, the bench, and laymen . . ." who crossed him, and thereby bringing the legal profession and the judiciary into disrepute. In re Sarelas, 50 Ill.2d 87, 98–99, 277 N.E.2d 313, 318–319 (1971).

There is no need to review here the nature of and the allegations contained in respondent's lawsuits even though a recitation of them furnishes an exegesis of the basis of the charge. The opinion of the Illinois Supreme Court clearly and succinctly summarizes at least fifteen suits filed by the respondent within a decade, all of which contained abusive and vituperative language and all of which were dismissed by the courts in which they were filed.

Respondent has broadly challenged almost every aspect of this disciplinary proceeding. Consequently, the opinion of this court will be of equally broad scope even though respondent's specific contentions may not be mentioned.

### AUTHORITY OF THE COURT

The power of a court to suspend an attorney from practice before that court is too well established to conceivably be doubted. The considerations involved when this action is taken were well summarized by Chief Justice Marshall one and one-half centuries ago:

"On one hand, the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise.

The right to exercise it ought not to be lightly or capriciously taken from him. On the other, it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved. For these objects, some controlling power, some discretion, ought to reside in the court. This discretion ought to be exercised with great moderation and judgment; but it must be exercised. . . ." Ex parte Burr, 22 U.S. (9 Wheat.) 529, 529–530, 6 L.Ed. 152 (1824).

The purposes for which the power to suspend is exercised have long been recognized to be of such paramount importance that any form of misconduct which might impair the trust and confidence of the public in the legal profession and in the integrity of the courts may be the occasion for disciplinary action. The Supreme Court long ago clearly and simply enunciated this principle:

"We do not doubt the power of the court to punish attorneys as officers of the same, for misbehavior in the practice of the profession. This power has been recognized and enforced ever since the organization of the courts, and the admission of attorneys to practice therein. If guilty of fraud against their clients, or of stirring up litigation by corrupt devices, or using the forms of law to further the ends of injustice; in fine, for the commission of any other act of official or personal dishonesty or oppression, they become subject to the summary jurisdiction of the court. Indeed, in every instance where an attorney is charged by affidavit with fraud or malpractice in his profession, contrary to the principles of justice and common honesty, the court, on motion, will order him to appear and answer, and deal with him according as the facts may appear in the case." Ex parte Bradley, 74 U.S. (7 Wall.) 364, 374, 19 L.Ed. 214 (1868).

■ A federal court has the duty to exercise its "controlling power" to suspend an attorney in order to maintain the respectability of and confidence in the bar when an attorney has been previously suspended by a state court. The judgment of the state court automatically casts grave doubt upon the fitness of the attorney to continue to be a member of the profession because it carries an inherent inference of the absence of the personal and professional qualities which an attorney must at all times possess. Selling v. Radford, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917).

Only if an examination of the record upon which the state court judgment is based renders it suspect will a federal court not recognize and follow it. Three conditions have been held to negate the conclusive effect of a state court judgment of suspension:

"1. That the state procedure, from want of notice or opportunity to be heard, was wanting in due process; 2, that there was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not, consistently with our duty, accept as final the conclusion on that subject; or 3, that some other grave reason existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained to do so. Id., at 51, 37 S.Ct. at 379.

■ More recent decisions indicate that the standards of *Selling* ". . . authoritatively expounded . . . the responsibility that remains in the federal judiciary. . . ." Theard v. United States, 354 U.S. 278, 282, 77 S.Ct. 1274, 1277, 1 L.Ed.2d 1342 (1957). The great respect and deference which federal courts continue to give to decisions of the state courts regulating the conduct of attorneys admitted to practice before them is best illustrated by the most recent Supreme Court review of a federal disciplinary proceeding, In re

Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). Rather than determining whether the conduct of the attorney justified his suspension from the Ohio bar as the concurring opinion would have done, *id.* at 552, 88 S.Ct. 1222 (White and Marshall, JJ. concurring), the majority of Court carefully premised its decision not to give the Ohio judgment conclusive effect upon the reason that the attorney was not given timely notice of the grounds for which he was ultimately suspended in accordance with the first requirement of *Selling*. In sum, whether or not an attorney's acts indicate a lack of the upright professional and private character necessary to demonstrate or to maintain his good standing remains a matter of judgment for the states to determine for themselves within, of course, the broad confines of due process protection of fundamental freedoms. Law Students Civil Rights Research Counsel, Inc. v. Wadmond, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971) (New York bar admission screening procedures valid upon their face); In re Stolar, 401 U.S. 23, 91 S.Ct. 713, 27 L.Ed.2d 657 (1971) (political association); Baird v. State Bar of Arizona, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); *id.* at 9, 91 S.Ct. 702 (Stewart, J., concurring) (political belief); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (privilege against self-incrimination); Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (political association); *Cf.* In re Oliver, 452 F.2d 111 (7th Cir. 1971) (freedom of speech). See also Chase v. Robson, 435 F.2d 1059 (7th Cir. 1970) (freedom of speech).

### THE ILLINOIS SUSPENSION ORDER

The first determination pursuant to *Selling* must be whether minimal due process rights in the form of adequate notice and opportunity to be heard were provided in the state disciplinary proceeding. Respondent's own chronology submitted with his response to the citation of this court indicates that he had notice of the inquiry eleven months before the first session before the Grievance Committee of The Chicago Bar Association was held. The formal complaint was filed fully eight months beforehand. Although respondent asserts that there was no response to his discovery requests, he was informed at the outset of the proceedings that the evidence against him of misconduct consisted of the records of the various lawsuits which he had filed and the dispositions of them. No new charges or new theories of misconduct were ever offered. An amendment to the complaint merely added counts referring to actions involving the respondent not mentioned in the original complaint, two of which were in the nature of supplemental complaints dealing with suits began after the original complaint was filed. Additional time was afforded the respondent to answer both the original complaint and the amendment. In re Sarelas, *supra* at 96 of 50 Ill.2d, 277 N.E.2d 317. *Cf.* In re Ruffalo, *supra.*

The record clearly shows that the respondent was given ample notice of the proceedings, their nature, the asserted misconduct, and the amendment to the complaint. He was given an opportunity to respond to both the complaint and the amendment, was allowed to have other parties present at the hearing, was allowed to object to the proceedings every other minute, and was allowed to vilify and to threaten the Commissioners. Respondent was beyond all doubt afforded due process and something more besides.[1]

As to whether the evidence supported the facts found to have established the lack of upright private and professional character, the second determination pursuant to *Selling*, there may well have been no clearer case since the effects of

---

1. "It is a tribute to the patience and tolerance of those conducting the proceeding that they were able to maintain any semblance of an orderly procedure." In re Sarelas, *supra*, at 98, 277 N.E.2d at 318.

apple eating were noticed by the proprietor of the Garden of Eden. This court has read the entire voluminous record of the state proceedings, most of which consists of the complaints filed by the respondent and their dispositions.[2] In addition to the documentary evidence of his misconduct, the record contains respondent's vilification and vituperation of those named in his complaints, the members of the bench and bar involved in adjudicating those complaints, and the Bar Association Commissioners and Committee on Inquiry. Ample evidence of respondent's propensity to make unfounded accusations, none of which he has ever been able to prove, may be had by examining any page of the state proceeding record at random or even his response to the citation of this court.[3] Finally respondent even had the *chutzpah* to twice sue the Bar Association and the various individual members of its disciplinary committees in this court after the state proceeding was begun.[4] In sum, the evidence not only supported the facts found to have established the lack of upright private and professional character, it was overwhelming.[5]

The third, and in this case probably the most important, determination required by *Selling* is whether some extraneous principle of right and justice will prevent this court from giving the Illinois suspension order conclusive effect. Although variously (and sometimes inartfully) stated, the crux of respondent's contention is that personal access to the courts is a fundamental freedom which is protected by the due process clause and which, consequently, may not be chilled by the threat of loss of likelihood. *See* Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed. 2d 113 (1971); Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718. *But see* United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). The short answer to this contention is that while fundamental freedoms enjoy absolute protection when exercised within their proper sphere, their abuse is subject to sanction. For example, even freedom of speech, the most critical ingredient of democratic society, may become subject to criminal sanctions if the speaker gratuitously intermeddles with law enforcement, Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), or disrupts normal governmental activities by demonstrating in areas not open to the public. Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966). *See generally* M. Nimmer, The Right to Speak From Times to Time: First Amendment Theory Applied to Libel and Misapplied to Privacy, 56 Cal.L.Rev. 935, 935–48 (1968).

Furthermore, even if access to the courts is a fundamental freedom,[6] it is inherently subject to reasonable reg-

---

2. Several of these suits were assigned to and dismissed by members of this Executive Committee who thus gained personal familiarity with their nature.

3. "Amazingly, the briefs filed by the respondent in this court are devoted primarily to the same type of abusive, repetitive accusations which give rise to this proceeding. Much of his brief is nothing more than charges repeated time and again against other members of the bar, the judiciary and the Chicago Bar Association." In re Sarelas, *supra*, at 98, 277 N.E.2d at 318.

4. Like much of respondent's litigation, these suits were dismissed for failure to state a cause of action.

5. Respondent's contention that, to the contrary, there was a complete absence of evidence would seem to call into question his competence as well as his character. Were the facts as respondent suggests, his suspension would be subject to attack as a violation of due process. Gregory v. City of Chicago, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969); Garner v. Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961); Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960).

6. The Supreme Court explicitly declined to make this declaration in Boddie v. Connecticut, *supra*, at 382–383, 91 S.Ct. 780, and because of its possible unpredictably broad implications, this court also expresses no opinion on this issue.

ulation and supervision.[7] Mr. Justice Harlan's notation in the narrowly limited opinion for the Court that ". . . it is here beyond present dispute that appellants bring these actions in good faith," Boddie v. Connecticut, supra at 381 of 401 U.S., at 788 of 91 S.Ct. clearly implies that the courts retain their inherent power to deal summarily with frivolous suits and with those who file them. Examples of such reasonable regulation include the conditioning of a discharge in bankruptcy upon payment of a filing fee in small weekly installments, United States v. Kras, *supra*, and the prohibition of "jail house lawyers" if minimally adequate legal representation is otherwise provided. Johnson v. Avery, *supra*, Contra, *id.* at 383 of 393 U.S., 89 S.Ct. 747 (Douglas, J., concurring).

■ Regulation of access to the courts by the courts themselves is appropriate because a court by its very nature operates retrospectively and deals with cases in contrast to legislative judgments which are prospective and affect undifferentiated classes and groups. *See* B. Cardozo, The Nature of the Judicial Process 119–21 (1921) *cf.* In re Oliver, *supra*. Because the courts act retrospectively, only concrete instances of abuses are acted upon, while abstract prohibitions or requirements which might impose additional burdens upon meritorious litigation are avoided. And because the courts act upon individual cases, the effect of its actions is only as wide as the individual or entity which has committed the abuse.

■ Hopefully, the decision to suspend the respondent for repeatedly filing defamatory and frivolous lawsuits will deter both the respondent and others from similar actions in the future. But rather than imposing a prior restraint upon litigation, the suspension will have only a carefully limited deterrent and preventive effect upon unacceptable conduct. The burden of disciplinary measures upon access to the courts is thus, like the analogous contempt power, ". . . the least possible power adequate to the end proposed." Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 231, 5 L.Ed. 242 (1821).

■ Respondent also claims that he is being denied the equal protection of the laws because sanction is imposed upon him which would not be imposed upon a layman who committed the same acts. Even assuming *arguendo* the truth of the assertion, the insight of Mr. Justice Cardozo that "[m]embership in the bar is a privilege burdened with conditions" is extremely relevant. Matter of Rouss, 221 N.Y. 81, 84, 116 N.E. 782, 783 (1917), quoted with approval in Theard v. United States, *supra* at 281 of 354 U.S., at 1276 of 77 S.Ct. The prime condition for continued membership in the bar is maintenance of the high moral character expected from all of its members. Any act which evidences the absence of high moral character, whether conviction for a crime [8] or unprofessional conduct, will consequently be the occasion for suspension of the attorney for the necessary protection of the public,

---

*Compare* Boddie v. Connecticut and the Constitutional Rights of Indigents, 45 Temple L.Q. 390 (1972) *and* Comment, Access to Bankruptcy Court for Indigents: The Extension of Boddie v. Connecticut, 16 St. Louis U.L.J. 328 (1971) with The Supreme Court, 1970 Term, 85 Harv.L.Rev. 3, 104–13 (1971).

7. However, access to the courts is clearly a due process right. But "First Amendment rights may not be used as the means or the pretext for achieving 'substantive evils' . . . . " California Motor Transport Co. v. Trucking Unlimited, 404

U.S. 508, 515, 92 S.Ct. 609, 614, 30 L. Ed.2d 642 (1972).

The exact contours of permissible regulation are considerably less than clear because the courts have ". . . seldom been asked to view access to the courts as an element of due process." Boddie v. Connecticut, *supra* at 375 of 401 U.S., at 785 of 91 S.Ct.

8. *See, e. g.*, In re Ming, 469 F.2d 1352 (7th Cir. 1972) ; In re Echeles, 430 F.2d 347 (7th Cir. 1970).

Theard v. United States, *supra*; but the suspension is not itself punishment for the act. *But cf.* In re Ming, *supra*, n. 8. The disparate treatment of attorneys and of the general public thus not only has a rational basis but also satisfies the most rigorous standard of equal protection by performing a compelling state interest, that of protecting the public from the few attorneys who have proven themselves to be unfit to practice the profession.

Respondent also repeatedly asserts that the conduct of his private litigation "may not be examined in any other place." While there can be no doubt that the results of his suits may not be reviewed except upon a proper appeal, the *manner* in which a litigant conducts a lawsuit has always been subject to further legal proceedings. The very existence from time immemorial of the torts of malicious prosecution, wrongful civil proceedings, and abuse of process are sufficient evidence of this truth. *See* W. Prosser, Handbook of the Law of Torts 834–858 (4th ed. 1971).

▪ In addition to his constitutional arguments respondent raises many points of Illinois procedure which he claims that the suspension procedure failed to follow. These contentions ignore the axiomatic principle of federalism that the state courts are the judges of their own procedures unless there is a denial of due process of law. Furthermore, there can be no doubt that the procedures here in question are consistent with due process guarantees:

"As the . . . [record] shows that . . . [respondent] was apprized of the charges filed against him, and that he had a reasonable opportunity to defend thereagainst, the procedure complained against did not violate a scheme of ordered liberty or a deep rooted principle of justice. In other words, we find that . . .

[respondent] was not denied federal due process of law.

"Neither the propriety of the designation by the Supreme Court of Illinois of committees of the Chicago Bar Association to act as commissioners in disciplinary proceedings, nor the claim that such committees were prejudiced against the . . . [respondent] herein raises a substantial federal question." Phipps v. Wilson, 186 F.2d 748, 752 (7th Cir. 1951).[9]

▪▪ The remaining and most important issue is whether respondent's conduct is so improper that this court is constrained to suspend him from practice before it "under the principles of right and justice. . . ." Selling v. Radford, *supra* at 51 of 243 U.S., at 379 of 37 S.Ct. A review of recent decisions leaves no doubt that the filing of frivolous and defamatory litigation is viewed by the federal courts as reprehensible conduct justifying disbarment. For instance, merely filing one frivolous suit in order to obtain interim relief for a client was sufficient cause for a Court of Appeals to raise the question of disciplinary proceedings. Panagopoulos v. Immigration and Naturalization Service, 434 F.2d 602 (1st Cir. 1970). The filing of a single suit containing allegations of a conspiracy among several state court judges, attorneys, and individuals, not dissimilar to the conspiracy allegations made by respondent, without supporting facts justified suspension by a district court. In re Whiteside, 386 F.2d 805 (2nd Cir. 1967), cert. denied, 391 U.S. 920, 88 S.Ct. 1804, 20 L.Ed.2d 657 (1968). Still a third Court of Appeals has held that accusations concerning integrity of state court judges repeated during the course of a disciplinary hearing without an attempt at justification are in themselves cause for disbarment independently of the state disciplinary judgment. In re Grimes, 364 F.2d 654

9. One issue not dealt with in *Phipps* but raised by respondent is asserted absence of a signature on the complaint. This court views the specific finding of the Illinois Supreme Court that ". . . the pleadings in this case [were] sufficient to satisfy the requirements . . ." of its rules to be conclusive. In re Sarelas, *supra*, at 96 of 50 Ill.2d, at 318 of 277 N.E.2d.

(10th Cir. 1966), cert. denied, 385 U.S. 1035, 87 S.Ct. 775, 17 L.Ed.2d 682 (1967). These cases illustrate that the principles of right and justice as understood by the federal courts not only permit but in fact demand that attorneys who make unfounded defamatory accusations, whether on behalf of a client or otherwise, and who thereby demonstrate a gross failure of professional judgment and character be disciplined for the protection of the public. *See* ABA Code of Professional Responsibility, DR 7–102 (A)(1) and DR 8–102.

It is therefore ordered, adjudged, and decreed that respondent be and he is hereby suspended from the practice of law as a member of the bar of this court for a period of two years and until further order of this court.

EDWIN A. ROBSON,
    Chief Judge, U.S.Dist.Ct.

R. B. AUSTIN,
    Judge, U. S. District Court.

JAMES B. PARSONS,
    Judge, U. S. District Court.

HUBERT L. WILL,
    Judge, U. S. District Court.

EXECUTIVE COMMITTEE