**CHICAGO COUNCIL OF LAWYERS et al., Plaintiffs-Appellants,**

v.

**William J. BAUER et al., Defendants-Appellees,**

**and**

**Terence MacCarthy et al., Intervenors-Appellees.**

**No. 74–1305.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 18, 1974.

Decided Aug. 4, 1975.

Rehearing and Rehearing En Banc Denied Dec. 16, 1975.

Milton I. Shadur, Joseph R. Lundy, Alexander Polikoff, Chicago, Ill., for plaintiffs-appellants.

George D. Crowley, Louis G. Davidson, Chicago, Ill., for amicus.

James R. Thompson, U.S. Atty., Gary L. Starkman and Jeffrey Cole, Asst. U.S. Attys., Terence F. MacCarthy, Chicago, Ill., for appellees.

Before CASTLE, Senior Circuit Judge, SWYGERT, Circuit Judge, and WYZANSKI, Senior District Judge.[1]

1. The Honorable Charles E. Wyzanski, Jr., Senior Judge for the United States District Court for the District of Massachusetts, is sitting by designation.

SWYGERT, Circuit Judge.

The question posed by this appeal is whether the "no-comment" rules of the District Court for the Northern District of Illinois deprive lawyers of their free speech rights under the First Amendment.

The plaintiffs, Chicago Council of Lawyers and seven members of the Chicago bar, brought this action seeking injunctive and declaratory relief on behalf of themselves and all lawyers who practice before the District Court for the Northern District of Illinois. They sought a determination that Rule 1.07 of the District Court's Local Criminal Rules (Appendix A) and Disciplinary Rule 7–107 of the American Bar Association's Code of Professional Responsibility (Appendix B) (which the District Court assumed *arguendo* was incorporated within Local General Rule 8[2]) are unconstitutionally vague and overbroad. The named defendants are the United States Attorney for the Northern District of Illinois, the Marshal for the District Court, and the Clerk of the District Court, all of whom are alleged to participate in the enforcement of these rules.[3] The intervening defendants are attorneys who regularly engage in the representation of defendants in criminal cases in the Northern District of Illinois. Motions to dismiss for failure to state a cause of action were filed on behalf of the defendants and granted by the district judges comprising the Executive Committee of the District Court. The reasons given for the judges' action were incorporated in a "Memorandum and Order" which appears at 371 F.Supp. 689 (N.D.Ill.1974).

## I

The plaintiffs contend that the "no-comment" rules unconstitutionally restrict lawyers' rights to comment publicly on pending litigation and to hear and read such public comment by other lawyers because the rules are not restricted to situations which present a "clear and present danger of a serious and imminent threat to the administration of justice." They argue that lawyers are entitled to full First Amendment rights and that the "reasonable likelihood of interference with a fair trial" standard employed by these rules is unconstitutional. Collaterally, the plaintiffs contend that many of the rules are constitutionally infirm because they are either vague or overbroad or both. Before discussing the separate rules, some general comments are in order.

Plaintiffs say that they do not ask constitutional protection for comment on litigation that "*in fact* affects or poses a clear and present danger to the administration of justice" or "*in fact* constitutes a serious and imminent threat to the administration of justice." They acknowledge the right of courts to protect their trials and to take all reasonable means to ensure a fair trial to every litigant. The plaintiffs argue that fair trials are not in issue because they "do not seek to protect lawyers' comments that actually impair the ability of the trial court to afford fair trials." Finally, they maintain that there is no need to "balance" the First Amendment rights of lawyers against litigants' due process rights to fair trials since these two rights do not compete.

**2.** General Rule 8 reads in part:

> Rule 8. Discipline of Attorneys; Reinstatement.

> The Executive Committee may order the disbarment or suspension of any attorney who (1) has been convicted of a felony in any federal, state or territorial court, or (2) has been disbarred or suspended by any such court. After notice and opportunity to respond, the judges of the Executive Committee may order the disbarment or suspension of any attorney who (1) has resigned from the bar of another court, or (2) has been convicted of a misdemeanor, or (3) is found to have committed acts of professional misconduct prejudicial to the orderly administration of justice such as fraud, deceit, malpractice or failure to abide by the provisions of the Canons of Ethics of the American Bar Association.

**3.** The district court apparently determined that the proper defendants were named and we assume this to be true for the purposes of this appeal.

We are not as sanguine as plaintiffs that there is no competition or conflict between the right of lawyers to free speech and the right of litigants to fair trials. If by noncompetition they mean that from an ideal or abstract view the two rights can and should coexist without disharmony, we might agree; however, pragmatically, in everyday situations there are bound to be conflicts. Consequently, when irreconcilable conflicts do arise, the right to a fair trial, guaranteed by the Sixth Amendment to criminal defendants and to all persons by the Due Process Clause of the Fourteenth Amendment, must take precedence over the right to make comments about pending litigation by lawyers who are associated with that litigation if such comments are apt to seriously threaten the integrity of the judicial process. We do not understand the plaintiffs to take a contrary position. That courts have the duty to ensure fair trials—"the most fundamental of all freedoms"[4]—is beyond question. The Supreme Court made this clear in *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Moreover, the Court in that case settled the corollary proposition that courts have the power to "take such steps by rule and regulation that will protect their processes from prejudicial outside interferences." 384 U.S. at 363, 86 S.Ct. at 1522.

The statement of these general propositions leads us a step further toward a solution of the issue raised in this appeal. Since the right of free speech must give way to the right of a fair trial when there is an irreconcilable conflict, the next inquiry relates to the limits of the circumscription on comment that lawyers can be required to observe consistent with their rights under the First Amendment.

A preliminary issue that should be addressed is whether we are to evaluate such rules as "prior restraints." A restriction deemed a prior restraint may not be per se unconstitutional, but it does come before us "with a 'heavy presumption' against its constitutional validity." *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1578, 29 L.Ed.2d 1 (1971). It is important to note, however, Mr. Justice Frankfurter's admonition that the phrase "prior restraint" not be deemed a "self-wielding sword" nor a "talismanic test." *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 441, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). Our case presents a perfect example of a situation in which the meaning behind the phrase should be examined. Admittedly, the rules in question have some elements similar to that which we have traditionally termed "prior restraints." A violation of the rules can be punished by the contempt power just like a failure to obey an injunction. The full criminal procedural safeguards, including the right to trial by jury, would not necessarily be available. Punishment by contempt is an important attribute of a "prior restraint" that distinguishes it from a criminal statute that forbids a certain type of expression.

But in an equally important aspect these rules differ from a "prior restraint." Normally a "prior restraint" constitutes a predetermined judicial prohibition restraining specified expression and it cannot be violated even though the judicial action is unconstitutional if opportunities for appeal existed and were ignored. See *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). The validity of court rules, however, can be challenged by one prosecuted for violating them since we have held that there is a fundamental distinction in this regard between actions taken by the court in its legislative role and those taken in its adjudicative role. *In re Oliver,* 452 F.2d 111 (7th Cir. 1971).

The conclusion we reach from this analysis is that we cannot label the no-comment rules as "prior restraints"

---

4. *Estes v. Texas,* 381 U.S. 532, 540, 85 S.Ct. 1628, 1632, 14 L.Ed.2d 543 (1965).

given the connotations of that term, but we do recognize that these rules have some of the inherent features of "prior restraints" which have caused the judiciary to review them with particular care. Thus, while we do not begin our examination with a "heavy presumption" against validity, we are aware of the fact that these court rules must endure even closer scrutiny than a legislative restriction.

This scrutiny centers on certain constitutional standards relating to clearness, precision, and narrowness. Rules which deny a lawyer his First Amendment rights in the interest of a fair trial must be neither vague nor overbroad. As the Supreme Court said in *Grayned v. City of Rockford,* 408 U.S. 104, 109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972):

> [W]here a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to " 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked." (footnotes omitted).

In *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960), the Supreme Court discussed the matter of overbreadth:

> In a series of decisions this Court has held that, even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgement must be viewed in the light of less drastic means for achieving the same basic purpose. (footnotes omitted).

We should keep in mind that extrajudicial comments which might impair the "orderly and fair administration of justice in a pending case," *Bridges v. California,* 314 U.S. 252, 263, 62 S.Ct. 190, 194, 86 L.Ed. 192 (1941), must be measured as are other utterances that are proscribed by reason of a countercompelling governmental interest. "[T]he limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier v. Martinez,* 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974).

Given these constitutional standards for guidance, we must ask: What test should apply to extrajudicial comments of lawyers about a pending proceeding that are apt to affect the fairness of the proceeding and therefore may be curtailed?

We are of the view that the rubric used in the rules under consideration, that lawyers' comments about pending or imminent litigation must be proscribed "if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice" is overbroad and therefore does not meet constitutional standards. Instead, we think a narrower and more restrictive standard, the one formulated in *Chase v. Robson,* 435 F.2d 1059, 1061–62 (7th Cir. 1970), and reaffirmed in *In re Oliver,* 452 F.2d 111 (7th Cir. 1971), should apply: Only those comments that pose a "serious and imminent threat" of interference with the fair administration of justice can be constitutionally proscribed. Given the objectives of clearness, precision, and narrowness we are of the view that this formulation is more in keeping with the precepts announced by the Supreme Court to which we have alluded than the one used by the local rules of the district court. A lawyer is put on stricter notice if he must gage his intended comments by a test that limits only comments which are a serious and imminent threat of interference with a fair trial than if his statements were governed by the more amorphous phrase: "a reasonable likelihood that such comment will interfere with a fair trial."

We should emphasize at this point, however, that this standard is not constitutionally sufficient by itself. While the

application of the standard to these rules can eliminate overbreadth, the specific rules are also necessary in order to avoid vagueness. The rules furnish the context necessary to determine what may constitute a "serious and imminent threat" of interference with the fair administration of justice.

## II

A few further general observations are necessary. The fact that it is the comments of lawyers involved in the litigation that is curtailed is of importance to both sides of the issue. Attorneys' statements are often the source of prejudicial publicity,[5] especially since their views and comments are usually accepted by the public on the basis that they come from a wellspring of reliable information. Restricting such comment can be a significant aid in controlling publicity which may affect the fairness of a trial. Thus, these rules might be viewed as the "least burdensome alternative" if a partial solution to the problem is accomplished by prohibiting only the speech of a very small group whose members are officers of the court with a special interest in protecting the integrity of our system of justice. Yet, there are important countervailing factors. Since lawyers are considered credible in regard to pending litigation in which they are engaged and are in one of the most knowledgeable positions, they are a crucial source of information and opinion. Often their clients will not be as articulate or informed. And despite our primary focus on prejudicial statements, we must keep in mind that there are important areas of public concern connected with current litigation. We can note that lawyers involved in investigations or trials often are in a position to act as a check on government by exposing abuses or urging action. It is not sufficient to argue that such comment can always be made later since immediate action might be necessary and it is only when the litigation is pending and current news that the public's attention can be commanded.

The barring of comment by lawyers representing criminal defendants may seem questionable for a variety of other reasons. The Sixth Amendment speaks only of the right of an accused and the Fifth Amendment only of the right of persons and not of the Government. The publication of the fact that a person is under investigation or is charged with the commission of a crime makes it difficult for the person involved to counter any injury to himself, his family, or friends caused by the publicity if his attorney is allowed only to say without elaboration that his client maintains his innocence. Under the no-comment rules, the lawyer, who usually is more articulate and more knowledgeable in the law than the accused, can perhaps best speak about such matters as defenses or the reputation of the accused as a law-abiding citizen. Only slight reflection is needed to realize that the scales of justice in the eyes of the public are weighed extraordinarily heavy against an accused after his indictment. A bare denial and a possible reminder that a charged person is presumed to be innocent until proved guilty is often insufficient to balance the scales.

Regardless of these considerations and our disquietude, we nonetheless believe that certain proscriptions on speech can constitutionally be invoked against defense counsel. We must not forget that public justice is no less important than an accused's right to a fair trial. The Reardon Committee drew no distinction between the prosecutor and defense counsel when discussing its recommendations relating to the conduct of attorneys.[6]

---

5. *See* Association of the Bar of the City of New York, Special Committee on Radio, Television, and the Administration of Justice, *Freedom of the Press and Fair Trial, Final Report with Recommendations* (1967) at 14–19.

6. The Committee's research indicates that, although potentially prejudicial disclosures by lawyers participating in a criminal case are relatively infrequent, they do occur and have on many occasions caused considerable

■ Finally, and more important, we are mandated by *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), to acknowledge that rules adopted by courts relating to attorneys' conduct and the protection of fair judicial proceedings should cut both ways:

> The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function. Collaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures. 384 U.S. at 363, 86 S.Ct. at 1522.

### III

■ These rules as they now read are, in our opinion, constitutionally infirm. This general infirmity results from a failure to specifically incorporate within each provision the serious and imminent threat standard. We do not believe that there can be a blanket prohibition on certain areas of comment—a per se proscription—without any consideration of whether the particular statement posed a serious and imminent threat of interference with a fair trial. Yet these rules establish such a blanket prohibition whereby even a trivial, totally innocuous statement could be a violation. The First Amendment does not allow this broad a sweep.

■ Still, we think there is a place and need for specific provisions in properly drawn rules. Lawyers must be aware of exactly what areas of speech might pose a serious and imminent threat of interference with a fair trial. The serious and imminent standard must always be an element of any prohibition.[7] We think that it is proper to formulate rules which would declare that comment concerning certain matters will presumptively be deemed a serious and imminent threat to the fair administration of justice so as to justify a prohibition against them. One charged with violating such a rule would of course have the opportunity to prove that his statement was not one that posed such a serious and imminent threat, but the burden would be upon him.

We find that with the inclusion of a generally applicable serious and imminent threat standard, many of the challenged rules could be considered as rules establishing such a presumption. Of course, allowing this type of presumption is itself a serious limitation of free speech. Each provision of these rules must be examined to determine whether

difficulty. Moreover, they are particularly likely to occur in cases that arouse substantial public interest, and in these cases it is not unusual for both sides to become active in courting public favor through the press.

Such conduct by attorneys representing the parties in a criminal proceeding is most reprehensible. The lawyer has a high professional obligation to maintain the integrity of the system he helps to administer. His duty to his client, of course, is cardinal, but that duty does not serve to justify an effort to win a criminal case through resort to the media on matters that must be decided only in the courtroom. . . . If a public official violates the standards of conduct in releasing information, the Committee believes that the appropriate response by defense counsel is not to debate the merits of the case in the media but to seek the imposition of judicial discipline and to protect his client by resort to one or more of the remedies described in Part III of the recommendations. Indeed, public debate of the merits may well aggravate the prejudice to the defendant, particularly if it induces a further response by the prosecution, and may render more difficult the obtaining of judicial relief. (footnotes omitted). Advisory Committee on Fair Trial and Free Press, ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Fair Trial and Free Press*—Approved Draft (1968) at 80–86.

7. The district court did hold that the "reasonable likelihood" standard embodied in the general statement in Local Rule 1.07(a) was to apply to all succeeding paragraphs.

the particular restrictive presumption is a proper basis for such a limitation.

## IV

We proceed then to the specific rules, examining first the no-comment rules relating to criminal matters. Most of the literature [8] and debate have centered on the problem of prejudicial publicity in criminal trials. As we have previously noted, the Supreme Court set the stage for court rules in this area by its observations in *Sheppard v. Maxwell.*

Local Rule 1.07 was in substantial part drawn verbatim from the suggested rules of the Kaufman Report which was prepared by twelve federal judges and ultimately adopted by the Judicial Conference of the United States. We think it is our duty, however, to examine the specific recommendations of this prestigious committee for it was acting in a legislative rather than an adjudicatory capacity. *See In re Oliver,* 452 F.2d 111 (7th Cir. 1971). With deference, we must dissect the rules and subject them to constitutional scrutiny.

The rules [9] pertaining to comment relative to criminal matters are divided according to the different stages of the criminal process. Rule 1.07(b) and DR 7–107(A) proscribe statements [10] during the investigative stages. These prohibitions are quite restrictive, but this is an unusual time frame in the prosecutorial process. While no one will have been formally charged with a crime, there may be great interest in the news media in the subject of the investigation. With new developments constantly occurring the potential for prejudicial publicity is considerable. Moreover, since there are no formal court proceedings pending there is no opportunity to obtain a specific pre-trial order limiting out-of-court statements. We can at least note that the mere statement that a particular individual is the subject of a grand jury investigation can have serious ramifications. The secrecy of grand jury proceedings must be strictly maintained.

Regardless of these considerations, there are serious problems with this section of the rules. The phrase "participating in or associated with the investigation" is ambiguous when applied to lawyers other than prosecutors. Does it cover attorneys representing witnesses before a grand jury? What about attorneys for individuals or corporations who are rumored to be the subject of an investigation? How much interchange with the prosecutors need they have before they become "associated with the investigation"? We cannot tell and neither could the conscientious attorney trying to determine if he could speak on behalf of his client. Indeed, the rules do not even allow a statement that the indi-

---

8. Various studies and reports have been published including:

Advisory Committee on Fair Trial and Free Press, ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Fair Trial and Free Press,* Approved Draft (1968) [hereinafter cited as the Reardon Report]; Committee on the Operation of the Jury System, Judicial Conference of the United States, *Report of the Committee on the Operation of the Jury System on the "Free Press-Fair Trial" Issue* (Sept., 1968), reported in 45 F.R.D. 391 [hereinafter cited as the Kaufman Report]; Association of the Bar of the City of New York, Special Committee on Radio, Television, and the Administration of Justice, *Freedom of the Press and Fair Trial, Final Report with Recommendations* (1967) [hereinafter cited as the Medina Report].

9. Local Rule 1.07 and DR 7–107(A)–(E) are substantially the same except that there is no counterpart to Rule 1.07(a) which is a general introductory section indicating that lawyers should make no public statements which would have a "reasonable likelihood" of interference with a fair trial or prejudice. We assume that this section or one like it would never be cited by itself as a basis for an alleged violation, since there are specific sections with particularized restrictions covering all phases of "pending or imminent criminal litigation." *See* Reardon Report at 84–85.

10. Although we refer throughout the opinion to restrictions or "statements" or "comment," only those that "a reasonable person would expect to be disseminated by means of public communication" are covered by these rules.

vidual in question denies any involvement in any criminal activity. Nor may the attorney publicly charge an abuse of the grand jury proceedings. The investigatory stage is not actually a part of the judicial process. The discretion is placed in the executive—the prosecutor. An important check on his use of that discretion is the political process. It is imperative that we allow as much public discussion as feasible about the way in which this authority is being exercised. The scope and purpose of an investigation is a legitimate subject for public concern and comment. Those in the best position to inform the public on that issue should be free to do so.

The section under discussion is too vague in terms of its application to attorneys other than those involved on behalf of the Government. More important, the restrictions are too broad for the benefit that may be derived. No one knows at that stage if a prosecution will develop and if there will be a trial that must be protected. It is unlikely that an attorney would attempt a "newspaper defense" of charges that have not been formally lodged. The possibility of prejudice to the Government's case, which has not even been presented by indictment or information, is too remote in view of the countervailing interests to justify these restrictions on nonprosecution attorneys.

 Those attorneys involved in the investigation for the Government are in a different position. They have the ability to influence and ensure proper governmental procedure without resort to public opinion. Moreover, they know what charges may be brought and are a prime source of damaging statements. Admittedly, our formulation may place prosecutors in a difficult position since they may be criticized for a particular investigation but may not publicly respond. This is a situation that competing interests necessitate. Ultimately the prosecutor's response will come in the

form of an indictment or information or else the investigation will have ended and his speech will be unrestricted. We conclude that Rule 1.07(b) and DR 7–107(A) could be used as a presumption of a serious and imminent threat, but only as to attorneys associated with the investigation on behalf of the Government.

## V

Local Rule 1.07(c) and DR 7–107(B) and (C) regulate comments by attorneys during the time from arrest or the filing of charges to commencement of trial or disposition without trial. Comments on six subjects are prohibited. Some general views concerning all six are necessary. There are areas in which "legitimate" reasons exist for attorneys' comment during a criminal case. The most important of these is in regard to an attorney's opinions and arguments about the unconstitutionality or injustice of a statute or rule. During the course of a criminal proceeding an attorney would be in a unique position to examine and criticize such legislation. Again there is the importance of the time factor in terms of gaining the public's attention. Ideally, we would want such views expressed in the abstract without reference to the particular case that is pending. Practically, it may not always be possible to differentiate the two. Still, we should recognize the importance of such criticism.

Other types of comment deserve mention. The particulars of a case might be deemed a necessary subject of public commentary in certain instances. As we said earlier, there is a societal interest in having the discretion of the prosecutor's office reviewed.[11] This interest still exists after the presentation of formal charges, but the countervailing factors are different. The possibility of prejudice is more concrete. There is also an interest in preventing the appearance that the merits of a particular pending

11. Such public criticism may be particularly vital when "political dissidents" have been indicted. *See* Comment, *Silence Orders—Preserving Political Expression By Defendants and Their Lawyers*, 6 Harv.Civ.Rights—Civ. Lib.L.Rev. 595 (1971).

prosecution are being tried in the press. A formal controversy that should be settled by the courts is in existence. The balance swings more toward the necessity of prohibiting certain speech at this stage in the criminal judicial process.

One final reason a conscientious attorney might wish "to take his case to the public" is to solicit defense funds. This type of solicitation is a legitimate function. But again it is countered by the factors just discussed. Moreover, our present judicial system has its own solutions for the problem of the defendant without funds.

Cognizant of these considerations, the specifics of DR 7–107(B) can be examined. The provisions of DR 7–107(C) which relate to what may be announced are irrelevant to our discussion except insofar as they limit the restrictions of DR 7–107(B).[12] (Local Rule 1.07(c) is substantially the same as DR 7–107(B) and (C).)

■ DR 7–107(B)(1) prohibits communication concerning "character, reputation, or prior criminal record." The possible prejudicial effect of negative comments on such matters is self-evident. Yet supportive statements by defense counsel can also be prejudicial since the Government is entitled to a fair trial and all opinion as to good character and reputation is not admissible evidence. Still, as we indicated earlier, it can be argued that whereas this restriction is proper for prosecutors it should not apply to defense counsel. The prosecutor has in a sense made his "statement" by the filing of an information or indictment. An accused would arguably want his attorney to "defend" his name in public.[13] But the issue that would be involved in such a "defense" is the very issue to be decided at trial.

The public's conclusion should be based on the trier of fact's conclusion rather than vice versa. We conclude that the no-comment restriction embodied in DR 7–107(B)(1) would be constitutionally permissible if subject to the standards formulated in Parts I and III of this opinion.

■ DR 7–107(B)(2) prohibits comment on the possibility of a plea of guilty. Such comment, obviously inadmissible at trial, could be highly prejudicial. Although the public may have a legitimate interest in a discussion of the use of plea bargaining by the prosecutors, sufficient information is available when pleas are actually entered. Certainly this tenuous relationship would not invalidate this provision given the lack of any other need for this type of comment.

■ DR 7–107(B)(3) prevents comments relative to confessions or statements by the accused. Disclosures concerning such matters are fraught with almost incurable prejudice. They could infringe on a defendant's Fifth Amendment privilege. In view of the natural tendency to draw an adverse inference from the assertion of the privilege and the careful attempts to avoid comment about such a choice during a trial, it seems that courts at least can require that attorneys who publicly discuss such matters must prove that their comment was not of the type that poses a serious and imminent threat of interference with a fair trial. Also, confessions or statements may ultimately be suppressed. The judicial system, in this context, has the right to expect that its own officers will not make public that which should not reach a juror. We conclude that there is no overriding purpose in allowing such comment and that it

12. It seems anomalous that DR 7–107(C)(7) allows public disclosure of physical evidence seized, since one apparent policy of DR 7–107(B) is to prevent comment about matters that might be inadmissible. There is always the possibility, that the evidence seized may be suppressed on constitutional grounds.

13. DR 7–107(C)(11) does allow an attorney to publicly state that his client denies the charges brought against him.

could be identified as a presumptively prohibited subject.

■ DR 7–107(B)(4) applies to results of examinations or tests or refusal to take them. Here again much of what just has been said is applicable: highly prejudicial material; possible involvement of constitutional rights; narrow restrictions limited to facts of defendant's case; and little chance of infringement on communication relating to an important public concern. This provision, with the proper standard, would not violate the First Amendment.

■ The fifth category of prohibited comment, DR 7–107(B)(5), involves "identity, testimony or credibility of a prospective witness." It might be argued that there is an overbreadth problem in using the term "prospective witness." We assume, however, that this provision is meant to apply to statements about persons in their role as potential witnesses. Viewing the entire provision we again find a narrow prohibition concerning a potentially prejudicial subject related almost exclusively to the particular case at issue. The need to provide a fair and unbiased trial could justify this type of limitation if subjected to the proper standards formulated in Parts I and III.

■ The final restrictive clause, DR 7–107(B)(6), is the broadest and most troublesome. It encompasses "[a]ny opinion as to the guilt or innocence of the accused, the evidence, or the merits of the case." It is important to note that the provision refers exclusively to "opinion" of the attorney and thus should be given special scrutiny. The prohibition on opinion as to guilt or innocence is permissible since this is a traditional ethical requirement in the legal profession and such an opinion could never properly be offered in court. The attorney is allowed to state that the accused denies the charges. Opinions on "the evidence" could not be offered without either giving information about the evidence or an opinion as to guilt or innocence. These are personal opinions

related only to the specific case and they too can be deemed a proper area for application of the presumption. The provision that causes us the most concern is the prohibition on opinions as to "the merits of the case." We are not sure what is encompassed by the term "merits." Arguably a general statement that an attorney believes a statute is unjust is an opinion on the merits of a pending case if his client is charged with violating that criminal provision. The same might be true for a general comment regarding court rules or procedure. But, as already discussed, these are the type of comments, if they are made abstractly, that should not be restricted. If a gloss on the word "merits" reflecting our concern was explicitly incorporated in a properly drawn rule we think this term could properly be used within a rule constituting a presumption of a serious and imminent threat.

## VI

Comment during the selection of a jury or during trial is governed by one general provision. DR 7–107(D) prohibits comment "that relates to the trial, parties, or issues in the trial or other matters that are reasonably likely to interfere with a fair trial." Rule 1.07(d) mentions only trial, parties, or issues and does not include "or other matters."

■ Both formulations constitute a broad prohibition. On the other hand the time frame is a special one. The period of time in which the restriction is in effect is relatively limited even in the case of a lengthy trial. More important, it is the stage in which there is likely to be the most intense news coverage and which therefore creates the most need to ensure that inadmissible opinions or statements do not encroach upon the laboratory conditions of the trial. A provision such as Local Rule 1.07(d) can be the basis for a presumption if the appropriate serious and imminent standard were to be incorporated.

There is, however, a serious vagueness problem associated with the phrase "or

other matters" employed in DR 7–107(D). We have trouble envisioning matters relating to something other than the trial, parties, or issues that could pose a serious and imminent threat of interference with a fair trial. We do not think that attorneys should be faced with considering whether a comment on any "other matter" could pose a serious and imminent threat. This portion of DR 7–107(D) is unconstitutionally vague.

■ There are two other contentions of plaintiffs that should be discussed. The first is that this section could never be used as a presumption of a serious and imminent threat unless it provides an exception for cases in which there is a sequestered jury. The argument is that there would be no need for a restriction because public statements would not reach the triers of fact. But this view assumes that a trial judge will never change his mind and release a sequestered jury. Then, there is always the possibility that an unedited newspaper or broadcast might reach even a sequestered juror. Given that counsel can always request that the provisions of a rule be relaxed in a specific case, we find no overbreadth problem in this regard.

Plaintiffs also urge that the rule could not constitutionally apply in cases of bench trials.[14] The issue is whether attorneys' out-of-court comment could ever be presumptively said to pose a serious and imminent threat of interference with a fair trial when the trier of fact is a life-tenured judge. Plaintiffs point to language in the general contempt power cases such as that in *Craig v. Harney*, 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546 (1947): "But the law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion. Judges are supposed to be men of fortitude, able to thrive in a hardy climate." Defendants counter with language contained in *Cox v. Louisiana*, 379 U.S. 559, 565, 85 S.Ct. 476, 481, 13 L.Ed.2d 487 (1965):

It is, of course, true that most judges will be influenced only by what they see and hear in court. However, judges are human; and the legislature has the right to recognize the danger that some judges, jurors, and other court officials, will be consciously or unconsciously influenced by demonstrations in or near their courtrooms both prior to and at the time of the trial. A State may also properly protect the judicial process from being misjudged in the minds of the public. Suppose demonstrators paraded and picketed for weeks with signs asking that indictments be dismissed, and that a judge, completely uninfluenced by these demonstrations, dismissed the indictments. A State may protect against the possibility of a conclusion by the public under these circumstances that the judge's action was in part a product of intimidation and did not flow only from the fair and orderly working of the judicial process.

As plaintiffs argue, *Cox* involved expression mixed with conduct rather than pure speech and this was one of the bases upon which the Supreme Court distinguished the general contempt cases. The Court, however, also drew the distinction that *Cox* concerned a statute proscribing specific behavior, namely, picketing with intent to interfere with the administration of justice near a courthouse. Here we are reviewing rules, legislative in character, that also proscribe specific conduct, though in broader terms. We conclude that both the contempt cases and *Cox* are relevant, though not dispositive on this issue.

■ The factor that we find important is the possibility that improper or prejudicial material will reach the trier of fact only by way of extrajudicial comment. It is true, of course, that such matter often comes to the attention of a judge during a bench trial since he must still rule on admissibility, and we must assume that he can reach his verdict

---

**14.** This argument would not be applicable to the rules concerning the earlier stages of the criminal process because it usually is not known for sure until the time of trial whether there will be a jury involved.

only on the basis of the admissible evidence. This does not mean, however, that we can overlook the fact that this is a difficult task, for "judges are human." If prejudicial material can be kept from ever coming to the attention of a judge a potential benefit is derived. It is a benefit that could justify the applicability of rules to bench trials. Unlike the general contempt power cases there is more involved here than merely insulating judges from public opinion based on certain known facts. We agree that life tenure is sufficient for this purpose. Properly drawn rules can perhaps prevent the necessity of a judge attempting to remove from his mind information that should not be considered. Also, the rule can prevent the appearance of decisions based on improper evidence—though we do not think this factor delineated by *Cox* is determinative. We hold therefore that there should be no distinction between bench trials and jury trials.

## VII

The final provision relating to criminal proceedings, DR 7–107(E), prohibits any comment during the period between completion of trial and sentencing that is "reasonably likely to affect the imposition of sentence." Plaintiffs' attack on this section is again premised on the concept that insulation of a judge from outside statements is not a sufficient necessity to justify this imposition on speech even if the provision incorporated a serious and imminent threat standard. In reference to this provision we concur with plaintiffs' contention.

Unlike the prohibition on comment during a bench trial, there is very little possibility that any factual matter that could not be presented in court would be communicated to the judge by way of extra-judicial comment of attorneys. This is because a judge is entitled to consider almost any factor in exercising his sentencing discretion. He may conduct an inquiry "largely unlimited either as to the kind of information he may consider, or the sources from which

it may come." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). *See also Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

The justification for a no-comment rule during this stage of the criminal process must be that judges should have an opportunity to arrive at an appropriate sentence free of public pressure. The assumption is that lawyers' statements could initiate or increase such pressure. We think it clear, however, that this consideration is not of sufficient magnitude to authorize this restriction in the case of life-tenured federal judges. We read the Supreme Court general contempt cases as indicating that the First Amendment does not authorize restrictions on "pure speech" merely for the purpose of protecting judges from criticism. *E. g. Bridges v. California*, 314 U.S. 252, 273, 62 S.Ct. 190, 86 L.Ed. 192 (1941). We therefore hold that comment restricted by Rule 1.07(e) and DR 7–107(E) could never be deemed a serious and imminent threat of interference with the fair administration of justice.

## VIII

Although all of the previously mentioned literature considered only the "fair trial-free press" issue in regard to criminal cases, we are also presented with the task of evaluating no-comment rules applicable to attorneys associated with civil actions. Local Rule 1.07 is limited to criminal matters, but DR 7–107(G) is a specific provision for all stages of civil litigation and is incorporated by Local General Rule 8.

Again some preliminary observations are necessary. In the context of these restrictions on attorneys' comment it is important to note particular distinctions between civil and criminal litigation. First, we should recognize that although we rightfully place a prime value on providing a system of impartial justice to settle civil disputes, we require even a greater insularity against the possibility

of interference with fairness in criminal cases. Perhaps this is symbolically reflected in the Sixth Amendment's requirement of an "impartial jury" in criminal cases whereas the Seventh Amendment guarantees only "trial by jury" in civil cases. The point to be made is that the mere invocation of the phrase "fair trial" does not as readily justify a restriction on speech when we are referring to civil trials.

Another vital factor is the length of civil litigation. Normally, civil litigation will be more prolonged than criminal litigation. One reason is that priority is afforded criminal matters because of the constitutional right to a speedy trial. Also, our civil rules allow much more discovery than our criminal rules. A civil case may last for years just in the discovery stage. DR 7–107(G) is not geared to specific time frames. It provides for blanket coverage of the period of "investigation or litigation." We are not sure of the parameters of an "investigation" of a civil matter, but given rather lengthy statutes of limitations we assume that there might be a restriction on speech for many years before a complaint is even filed. And the use of the general term "litigation" implies that attorneys' comments are also proscribed while a case is on appeal. The criminal no-comment rules contain no restrictions on statements made after sentencing. It is clear that DR 7–107(G) cannot be deemed a prohibition on speech that applies only for a limited period. Restrictions for many years are quite possible. Therefore, the broad time span of this rule relating to civil matters is an influential factor weighing against its constitutionality.

Finally, there is the element of the nature of certain civil litigation. As plaintiffs indicate, in our present society many important social issues became entangled to some degree in civil litigation. Indeed, certain civil suits may be instigated for the very purpose of gaining information for the public. Often actions are brought on behalf of the public interest on a private attorney general theory. Civil litigation in general often exposes the need for governmental action or correction. Such revelations should not be kept from the public. Yet it is normally only the attorney who will have this knowledge or realize its significance. Sometimes a class of poor or powerless citizens challenges, by way of a civil suit, actions taken by our established private or semi-private institutions or governmental entities. Often non-lawyers can adequately comment publicly on behalf of these institutions or governmental entities. The lawyer representing the class plaintiffs may be the only articulate voice for that side of the case. Therefore, we should be extremely skeptical about any rule that silences that voice.

Viewing the five general areas of proscribed comment relating to civil litigation, we hold that individually and collectively they would be constitutionally impermissible if deemed presumptively prohibited. The first section of the rule prevents any public statements concerning the evidence regarding the matters in the case. Such a broad restriction might prevent an attorney from informing the public about the government's manner of performing certain tasks since testimony about these practices would probably be relevant evidence. For instance, in an airplane crash case an attorney who discovered that unsafe flight procedures were in effect and were being condoned by government regulatory agencies could not impart this vital knowledge to the public because it almost certainly would also constitute a part of his evidence. The performance or results of tests which cannot be the subject of public comment by reason of DR 7–107(G)(3) also may contain such crucial information. The need for informed and complete discussion of this type of issue far outweighs any possible benefit that might accrue in terms of maintaining the laboratory conditions of a civil trial.

Arguably, the most defensible portion of this civil rule is DR 7–107(G)(2) which restricts comment concerning the "char-

acter, credibility, or criminal record of a party, witness or prospective witness." On balance, we do not think even this limited aspect of the rule should stand. Usually there would be little need or ethical justification for statements in this vein. At times, however, comments of this type might be appropriate. Statements and actions of public officials are often involved in civil lawsuits and may be the impetus for suits. The public has a legitimate interest in the character and credibility of both elected and appointed officials. Attorneys involved in certain litigation may have a unique opportunity to evaluate the public statements made by officials. We think they should be allowed to offer their opinions and the bases for them without having to await the completion of lengthy litigation. Some remote possibility of our being unable to ensure an impartial trial is simply not a sufficient countervailing factor.

The fourth prohibition in the rule relates to an "opinion as to the merits of the claims or defenses of a party." This provision is so broad that it covers legal issues. Thus, an attorney involved in a case could not even write a law review article concerning any aspect of the matter. And if the case is one involving "public policy considerations" the attorney could not offer his views on the social issue. Yet his involvement in the suit would show his interest in and familiarity with the question. An informed viewpoint would be removed from the public forum without justification. We can envision little benefit from this prohibition and find that as drawn it would conflict with the very purpose of the First Amendment.

Finally, we have the catchall provision proscribing public comment on "[a]ny other matter reasonably likely to interfere with a fair trial of the action." This vague provision could not stand even with the substitution of what we have declared to be the correct standard. Its chilling effect is obvious. If some restriction is necessary in a particular case then perhaps a specific order can be

entered supported by a record showing its necessity and the unavailability of a narrower restriction. We need not decide that issue here. We do recognize the great benefits derived from allowing uninhibited comment by knowledgeable attorneys involved in civil litigation. This is the same type of recognition embodied in the First Amendment.

The judgment of the district court is reversed and the cause is remanded for entry of appropriate relief in accordance with this opinion.

WYZANSKI, Senior District Judge (concurring):

Judge Swygert's thorough opinion, prepared after full review of the authorities and mature consideration of basic principles and supposititious cases, commands my respect. Yet the nature of this proceeding raises questions whether as a matter of discretion it is consistent with the *prudent* exercise of discretionary judicial power under Article III of the United States Constitution, under the Declaratory Judgment Act, and under other statutes conferring jurisdiction upon the federal courts, for this court to pass judgment upon imaginary cases sometimes scorned as "a parade of horribles."

This action seeks injunctive and declaratory relief with respect to the constitutionality of virtually every provision of the complex, lengthy provisions of Rule 1.07 of the Local Criminal Rules adopted by the United States District Court for the Northern District of Illinois, and of so much of that same Court's Local General Rule 8 (applicable to civil cases) as is derived from Disciplinary Rule 7–107 of the American Bar Association's Code of Professional Responsibility. In general, plaintiffs complain that the rules cited are so vague and overbroad as to deny the due process of law guaranteed by the Fifth Amendment to the Constitution, the freedom of speech guaranteed by the First Amendment, and other constitutional guarantees implicit in Article III and the Fifth and Sixth Amendments.

It is plain that the complaint is not frivolous. Without pausing to underline the careful critique in Judge Swygert's detailed analysis, there are provisions which indubitably deny or chill the exercise by lawyers of some recognized constitutional rights fundamental to civic and professional privileges, duties, and interests. An attempt by a court to enforce some of these restrictions would be unconstitutional, and if plaintiffs are to be fully protected with respect to those rights it is appropriate that they be judicially vindicated promptly without leaving plaintiffs to act at their peril.

Yet this action invites, in advance of a specific invocation of any rule in the form of a disciplinary or punitive action, a scrutiny of all the complex provisions of a total code of professional conduct in a broad branch of the profession of advocacy. This code has been adapted from drafts prepared after prolonged, highly competent work by professional committees of judges and lawyers of distinction and experience. They, like ourselves, of course, may have erred. They, like ourselves, were acting not in relation to immediate controversies arising out of actual conflict, but in relation to hypothetical cases which they foresaw or feared.

In short, those committees, like the District Court, were exercising a quasi-legislative function.

It might have been proper and preferable for the Circuit Council of this Seventh Circuit to have reviewed in a like *legislative* manner those or any other rules of the District Court for the Northern District of Illinois. But that is not the nature of this proceeding. Here we have what purports to be an Article III "case" or "controversy." We are asked to make an adjudication. That adjudication will constitute a precedent and may have other binding consequences. Yet inasmuch as it is not addressed to specific, concrete facts it also partakes of the nature of an advisory opinion with all the dangers inherent in such speculative judgments.

Of course the advisory and sweeping aspects of the opinion do not imply that the case is beyond our judicial *power* under Article III or any other provision of the Constitution, or under the provisions of the Declaratory Judgment Act, or under the governing principles for the exercise of equity jurisdiction.

Yet there is ground for us to weigh carefully the good sense and wisdom of our exercising our discretion whether to render a judgment upon the questions presented when we, like those who drafted the rules, are necessarily relying more on imagination than on a factual record.

It might be prudent to decline, as a matter of discretion, to deliver an opinion or to enter a judgment detailing our views on the difficult constitutional matters presented, on which perhaps we are not better qualified than the original draftsmen. We might wait for the harvest to discern the wheat and the tares.

Yet, after mature deliberation, I am content to concur in the admirable opinion of Judge Swygert, although I think it may be desirable to state the reasons that induce my concurrence.

Freedom of speech, particularly in the area of professional responsibility, is a prized value in our society. The restraints upon that freedom which are embodied in these rules, unless they are constitutionally valid, would gravely affect justice. To remit those who are faced with unconstitutional restraints solely to litigation *after* they had acted would impair their liberties, chill freedom of expression, and sacrifice important public interests. Judge Swygert's opinion convincingly demonstrates that those are not fanciful dangers.

I have no doubt that in each and every instance where Judge Swygert's opinion condemns as unconstitutional a specific provision of the rules his judgment is sound.

Perhaps I am less clear that those provisions of the rules which pass muster in Judge Swygert's discriminating and thoughtful opinion would be certain to be upheld in a later case which arose

upon a record of concrete conflict which had occurred in a specific instance. But if at a later date a state of facts does further illumine an issue, this declaratory judgment ought not to be regarded as an indistinguishable precedent nor an insurmountable obstacle.

Furthermore, I am not unmindful that, particularly since other courts are now wrestling with the issues here invoked—see, for example, the litigation in the New York state courts to which reference is made in the July 13, 1975 *New York Times*—it would probably be helpful to other judges, as it has been to me, and presumably to the bar and bench of this Circuit, to have published the penetrating and persuasive analysis prepared by Judge Swygert. Hence I concur in his opinion.

CASTLE, Senior Circuit Judge (dissenting in part).

It is apparent from a reading of the District Court's Local Criminal Rule 1.07 that 1.07(a) is designed to state generally the *duty* of counsel in connection with extrajudicial comment concerning criminal litigation with which he is associated, and that the remaining subdivisions of the Rule (1.07(b)—1.07(e)) are intended to proscribe, within the applicable time frame designated in each, comment concerning particular subject matter which constitutes a *breach* of that duty.

I dissent from the majority opinion insofar as it may be taken as requiring as a condition to the constitutional validity of Rule 1.07 that the element of "reasonable likelihood" be eliminated from the standard which is to govern and measure counsel's duty in the premises. It is my view that the overbreadth of Rule 1.07 lies only in its proscription of any comment which "will interfere" with a fair trial or "otherwise prejudice" the due administration of justice without regard to whether the interference or prejudice is both serious and imminent. Thus, I agree with the majority that to satisfy First Amendment rights of counsel the

Rule must additionally incorporate both the elements of seriousness and imminence. Merely trivial, insubstantial interference or prejudice, or a remote possibility of interference or prejudice, is not sufficient to justify proscription. But comment which, if publicly disseminated,[1] would produce a "reasonable likelihood" of serious and imminent interference with or prejudice to a fair trial or the due administration of justice is subject to proscription. And, from my understanding of the relevant decisions, I find no First Amendment or other constitutional basis for requiring that the District Court be limited in its mode of expressing the governing standard to a parroting of the "poses a serious and imminent threat" phraseology this Court saw fit to employ in the *Chase v. Robson* and *In re Oliver* opinions cited by the majority. In the context here involved a "reasonable likelihood" of resulting serious and imminent interference or prejudice is certainly a standard equally as definite as "poses a serious and imminent threat" of interference or prejudice.

A rule incorporating the "reasonable likelihood" element as well as the "serious and imminent" factors is well within the scope of remedy advocated in *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600, where the Court, after declaring that "the trial courts must take strong measures," pointed out:

"... reversals are but palliatives; the cure lies in those remedial measures that will prevent the prejudice at its inception. The courts must take steps by rule and regulation that will protect their processes from prejudicial outside interference."

## APPENDIX A

### 1.07 PUBLIC DISCUSSION BY ATTORNEYS OF PENDING OR IMMINENT CRIMINAL LITIGATION

(a) It is the duty of the United States Attorney, or a lawyer or law firm not to

---

1. Rule 1.07, in this respect, is expressly confined to extrajudicial comment which "a reasonable person would expect to be disseminated by means of public communication."

release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which he or the firm is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

(b) With respect to a grand jury or other pending investigation of any criminal matter, the United States Attorney or a lawyer participating in or associated with the investigation shall refrain from making any extrajudicial statement which a reasonable person would expect to be disseminated by means of public communication, that goes beyond the public record or that is not necessary to inform the public that the investigation is underway, to describe the general scope of the investigation, to obtain assistance in the apprehension of a suspect, to warn the public of any dangers, or otherwise to aid in the investigation.

(c) From the time of arrest, issuance of an arrest warrant, or the filing of a complaint, information, or indictment in any criminal matter until the commencement of trial or disposition without trial, the United States Attorney, or a lawyer or law firm associated with the prosecution or defense shall not release or authorize the release of any extrajudicial statement which a reasonable person would expect to be disseminated by means of public communication, relating to that matter and concerning:

(1) The prior criminal record (including arrests, indictments, or other charges of crime), or the character or reputation of the accused, except that the lawyer or law firm may make a factual statement of the accused's name, age, residence, occupation, and family status, and if the accused has not been apprehended, the United States Attorney may release any information necessary to aid in his apprehension or to warn the public of any dangers he may present;

(2) The existence or contents of any confession, admission, or statement given by the accused, or the refusal or failure of the accused to make any statement;

(3) The performance of any examinations or tests or the accused's refusal or failure to submit to an examination or test;

(4) The identity, testimony, or credibility of prospective witnesses, except that the lawyer or law firm may announce the identity of the victim if the announcement is not otherwise prohibited by law;

(5) The possibility of a plea of guilty to the offense charged or a lesser offense;

(6) Any opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case.

The foregoing shall not be construed to preclude the United States Attorney, or a lawyer or law firm during this period, in the proper discharge of his or its official or professional obligations, from announcing the fact and circumstances of arrest (including time and place of arrest, resistance, pursuit, and use of weapons), the identity of the investigating and arresting officer or agency, and the length of the investigation; from making an announcement, at the time of seizure of any physical evidence other than a confession, admission or statement, which is limited to a description of the evidence seized; from disclosing the nature, substance, or text of the charge, including a brief description of the offense charged; from quoting or referring without comment to public records of the court in the case; from announcing the scheduling or result of any stage in the judicial process; from requesting assistance in obtaining evidence; or from announcing without further comment that the accused denies the charges made against him.

(d) During the trial of any criminal matter including the period of selection of the jury, no United States Attorney, or lawyer or law firm associated with the prosecution or defense shall give or authorize any extrajudicial statement or

interview, relating to the trial or the parties or issues in the trial which a reasonable person would expect to be disseminated by means of public communication, except that the United States Attorney, or lawyer or law firm may quote from or refer without comment to public records of the court in the case.

(e) After the completion of a trial or disposition without trial of any criminal matter, and prior to the imposition of sentence, the United States Attorney, or a lawyer or law firm associated with the prosecution or defense shall refrain from making or authorizing any extrajudicial statement which a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will affect the imposition of sentence. (Amended effective March 9th, 1971)

## APPENDIX B

DR 7–107 Trial Publicity.

(A) A lawyer participating in or associated with the investigation of a criminal matter shall not make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication and that does more than state without elaboration:

(1) Information contained in a public record.

(2) That the investigation is in progress.

(3) The general scope of the investigation including a description of the offense and, if permitted by law, the identity of the victim.

(4) A request for assistance in apprehending a suspect or assistance in other matters and the information necessary thereto.

(5) A warning to the public of any dangers.

(B) A lawyer or law firm associated with the prosecution or defense of a criminal matter shall not, from the time of the filing of a complaint, information, or indictment, the issuance of an arrest warrant, or arrest until the commencement of the trial or disposition without trial, make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication and that relates to:

(1) The character, reputation, or prior criminal record (including arrests, indictments, or other charges of crime) of the accused.

(2) The possibility of a plea of guilty to the offense charged or to a lesser offense.

(3) The existence or contents of any confession, admission, or statement given by the accused or his refusal or failure to make a statement.

(4) The performance or results of any examinations or tests or the refusal or failure of the accused to submit to examinations or tests.

(5) The identity, testimony, or credibility of a prospective witness.

(6) Any opinion as to the guilt or innocence of the accused, the evidence, or the merits of the case.

(C) DR 7–107(B) does not preclude a lawyer during such period from announcing:

(1) The name, age, residence, occupation, and family status of the accused.

(2) If the accused has not been apprehended, any information necessary to aid in his apprehension or to warn the public of any dangers he may present.

(3) A request for assistance in obtaining evidence.

(4) The identity of the victim of the crime.

(5) The fact, time, and place of arrest, resistance, pursuit, and use of weapons.

(6) The identity of investigating and arresting officers or agencies and the length of the investigation.

(7) At the time of seizure, a description of the physical evidence seized,

other than a confession, admission or statement.

(8) The nature, substance, or text of the charge.

(9) Quotations from or references to public records of the court in the case.

(10) The scheduling or result of any step in the judicial proceedings.

(11) That the accused denies the charges made against him.

(D) During the selection of a jury or the trial of a criminal matter, a lawyer or law firm associated with the prosecution or defense of a criminal matter shall not make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication and that relates to the trial, parties, or issues in the trial or other matters that are reasonably likely to interfere with a fair trial, except that he may quote from or refer without comment to public records of the court in the case.

(E) After the completion of a trial or disposition without trial of a criminal matter and prior to the imposition of sentence, a lawyer or law firm associated with the prosecution or defense shall not make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by public communication and that is reasonably likely to affect the imposition of sentence.

\* \* \* \* \* \*

(G) A lawyer or law firm associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, that a reasonable person would expect to be disseminated by means of public communication and that relates to:

(1) Evidence regarding the occurrence or transaction involved.

(2) The character, credibility, or criminal record of a party, witness, or prospective witness.

(3) The performance or results of any examinations or tests or the refusal or failure of a party to submit to such.

(4) His opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule.

(5) Any other matter reasonably likely to interfere with a fair trial of the action.