No. 83-110

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

IN THE MATTER OF ROBERT S. KELLER,
an attorney and counselor at law.

_____

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

Appearances:

Robert S. Keller, Kalispell, Montana
Gene A. Picotte argued, Clancy, Montana
Attorney for Respondent

Douglas J. Wold argued, Polson, Montana
Special Prosecutor

Hon. Mike Greely, Attorney General, Helena, Montana
Clay Smith, Asst. Attorney General, Helena, Montana
Amicus Curiae

_____

Submitted: September 11, 1984

Decided: November 1, 1984

Filed: NOV - 1 1984

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Frank B. Morrrison, Jr. delivered the Opinion of the Court.

The Commission on Practice, an arm of this Court charged with investigating and hearing ethical complaints against Montana lawyers, filed a complaint against respondent Robert S. Keller alleging violation of the Canons of Professional Ethics, Disciplinary Rules Nos. DR 7-107(B) and DR 7-107(H). Respondent filed a motion to dismiss for the reason that the disciplinary rules were unconstitutionally broad and that they violated his rights of free speech. An answer brief was filed by Douglas Wold as Special Prosecutor for the Commission on Practice. Thereafter, we entered an order directing the Attorney General to appear amicus curiae. The Attorney General's brief was filed. The case is before us on respondent's motion to dismiss the complaint filed by the Commission on Practice.

Respondent Robert S. Keller is an attorney in Kalispell, Montana, who was retained to represent a Kalispell dentist with respect to certain criminal charges. Keller's client was charged with sexual assault. During the pendency of the action Keller, as counsel for his client, wrote a letter to the client's patients and friends. The letter attacked the credibility of the State's case and presented the merits of the defense. The first paragraph of the letter states its purpose:

> "The media has been merciless to Jim Paisley . . . in fact, 'savage' would be a more accurate description. This is not uncommon, but whether I like it or not, I'm accustomed to it. Jim is not. He penned a press release, to give his side of the story, but I advised him that it would be an exercise in futility. I told him that if he wanted to do anything, an explanation should be given to his friends and patients, for they've stood by him, and there are too many to explain the situation to individually. The purpose of this letter is to help keep open the minds of the people whom he cares about amidst the flurry of one-sided reporting and rumors. As such, I'm writing this

2

letter to you, with the intention of reproducing it, and having Jim put in the addresses and names."

There follows a detailed description of the weaknesses in the State's case. There is no question but what Keller, in the letter, attacked the State's credibility and presented the merits of the defense.

For purposes of this appeal we need not examine all of the language of the disciplinary rules. We find it dispositive to quote DR 7-107(B):

"A lawyer or law firm associated with the prosecution or defense of a criminal matter shall not, from the time of filing of a complaint, information, or indictment, the issuance of an arrest warrant, or arrest until the commencement of the trial or disposition without trial, make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication and that relates to:

"(1) The character, reputation, or prior criminal record (including arrests, indictments, or other charges of crime) of the accused.

"(2) The possibility of a plea of guilty to the offense charged or to a lesser offense.

"(3) The existence or contents of any confession, admission, or statement given by the accused or his refusal or failure to make a statement.

"(4) The performance or results of any examinations or tests or the refusal or failure of the accused to submit to examinations or tests.

"(5) The identity, testimony, or credibility of a prospective witness.

"(6) Any opinion as to the guilt or innocence of the accused, the evidence, or the merits of the case."

The law is clear that the disciplinary rules cannot be literally applied. Chicago Council of Lawyers v. Bauer (7th Cir. 1975), 522 F.2d 242; Markfield v. Association of the Bar of the City of New York (1975), 49 A.D.2d 516, 370 N.Y.S.2d 82, appeal dismissed, 37 N.Y.2d 794, 337 N.E.2d 612, 375

3

N.Y.S.2d 106. Per se violations of the disciplinary rule quoted above cannot form the basis of an ethical charge without interferring with free speech rights. The question in the case is whether the disciplinary rules should be interpreted so as to make them constitutional and, if so, what kind of limiting standards should be applied.

Respondent Keller argues that the disciplinary rules cannot be interpreted. They are clear on their face. The rules are unconstitutional in that they (1) interfere with free speech rights and (2) are overbroad and vague. On the other hand, the Commission argues that implicit within the disciplinary rule is the "reasonable likelihood" standard. The Commission would have us interpret the rule so that its terms would be violated if there was a dissemination which had a "reasonable likelihood" of interferring with the administration of justice. Hirschkop v. Snead (4th Cir. 1979), 594 F.2d 356, in support.

In Hirschkop, supra, the 4th Circuit Court of Appeals upheld the constitutionality of a similar disciplinary rule. In testing constitutionality, the Court adopted an approach which required the satisfaction of two requirements. First, the Court found that the disciplinary rule furthered a substantial governmental interest, i.e., the right to a fair trial. Secondly, the Court determined that the rule did not restrict first amendment rights any more than was necessary to protect the dominant right of a fair trial. Having decided that the two requirements for constitutionality were satisfied, the Court then considered whether the Canon was unconstitutionally vague because it did not specify any objective standard. The Court adopted the "reasonable likelihood" test and held that this standard was implicit within the disciplinary rule itself.

4

In the case at bar, the Commission on Practice buttresses Hirschkop, supra, by arguing that the preamble to Montana's DR 7-107 contains an adequate, measurable standard. The preamble, says the Commission, when read in conjunction with DR 7-107, expressly prohibits extra-judicial statements which do not maintain "absolute confidence in the integrity of the bar and the efficient and impartial administration of justice . . . [and] . . . merit the approval of all just men."

Respondent Keller cautions this Court against implying a standard. With persuasive force, respondent argues that standards not written, but rather implied by the courts, give no guidance to attorneys. Therefore, the disciplinary rule must rise or fall on its express language.

There can be little argument that the disciplinary rule, literally applied, interferes with First Amendment rights of free speech. On the other hand, First Amendment rights can be abridged if they come in direct conflict with Sixth Amendment rights to a fair trial and Fourteenth Amendment rights of due process. This conflict was described by the Seventh Circuit Court of Appeals in Chicago Council of Lawyers v. Bauer, supra, 522 F.2d at 248:

> "Consequently, when irreconcilable conflicts do arise, the right to a fair trial, guaranteed by the Sixth Amendment to criminal defendants and to all persons by the Due Process Clause of the Fourteenth Amendment, must take precedence over the right to make comments about pending litigation by lawyers who are associated with that litigation if such comments are apt to seriously threaten the integrity of the judicial process."

In the Bauer case, the 7th Circuit Court of Appeals found that the "reasonable likelihood to interfere with a fair trial" language was overbroad and did not meet constitutional standards. The Court said:

5

"Instead, we think a narrower and more restrictive standard, the one formulated in Chase v. Robscn, 435 F.2d 1059, 1061-62 (7th Cir. 1970), and reaffirmed in In Re Oliver, 452 F.2d 111 (7th Cir. 1971), should apply: Only those comments that pose a 'serious and imminent threat' of interference with the fair administration of justice can be constitutionally proscribed. Given the objectives of clearness, precision, and narrowness, we are of the view that this formulation is more in keeping with the precepts announced by the Supreme Court to which we have alluded than the one used by the local rules of the district court. A lawyer is put on stricter notice if he must gage [sic] his intended comments by a test that limits only comments which are a serious and imminent threat of interference with a fair trial than if his statements were governed by the more amorphous phrase: 'a reasonable likelihood that such comment will interfere with a fair trial.'" 522 F.2d at 249.

In Markfield v. Association of the Bar, supra, the Court found that discipline should only be applied where it was found that the statements attributable to counsel presented a "clear and present danger" to the fair administration of justice.

We have three possible standards for a disciplinary rule. Although First Amendment rights cannot be abrogated without reference to some standard, the courts recognize those rights can be constitutionally impinged under one of three standards:

(1) Where there is a "reasonable likelihood" that the administration of justice will be impaired.

(2) Where there is a "serious and imminent threat" to the fair administration of justice.

(3) Where there is a "clear and present danger" that fair trial rights will be abridged.

We hold that DR 7-107 (B) and (H) unconstitutionally abridge free speech rights without creating a clear standard by which attorneys can gauge their conduct. This Court has the power to imply a standard but as a matter of policy feels that unwise. Neither do we at this time express a preference for one of the three tests adopted by others. The appropriate

6

test to be applied should be considered anew and another disciplinary rule drafted. We therefore declare DR 7-107(B) and (H) to be void. The complaint against respondent is dismissed with prejudice.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

_____
Honorable Leonard H. Langen,
District Judge, sitting in place
of Mr. Justice L. C. Gulbrandson


Mr. Justice Fred J. Weber:

    I dissent.

_____
Justice

7